

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1524-10

**RION PHEAL SNOWDEN, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, JOHNSON, KEASLER, HERVEY, COCHRAN and ALCALA, JJ., joined. WOMACK, J., dissented.

### O P I N I O N

Rion Pheal Snowden, the appellant, was convicted by a jury of family-violence assault on Lavondra Jennings, who was about thirty-eight weeks pregnant with the appellant's child at the time of the assault. The jury assessed punishment at two years' imprisonment. In an unpublished opinion, the Fifth Court of Appeals in Dallas reversed the appellant's conviction and remanded the cause to the trial court for a new trial. The court of appeals held that the

trial court erred in overruling the appellant's objection to the State's improper jury argument commenting on his failure to testify.[1] The court of appeals was unable to conclude beyond a reasonable doubt that the trial court's error did not contribute to the appellant's conviction or punishment.[2] In her petition for discretionary review, the State Prosecuting Attorney (SPA) argues that this Court should reassess the appropriateness of certain factors set forth in *Harris v. State* in assessing the harmfulness of constitutional error.[3] We granted the SPA's petition for discretionary review to address this issue, and we now reverse.

## FACTS AND PROCEDURAL POSTURE

### At Trial

Jennings testified at trial that she and the appellant were at the public library in Garland when she discovered that the appellant was cheating on her. They left the library together, and an argument ensued while Jennings and the appellant were in the car. The appellant cursed at her and hit her in the face several times, but without much force, while he was driving them back to their apartment. Once they arrived at the apartment, Jennings ran inside and locked herself in a bathroom to call 911. As the appellant was forcing the bathroom door open, he hit her in the face again several times, but again without much force.

---

[1] *Snowden v. State*, 2010 WL 2927472, No. 05-09-00652-CR (Tex. App.—Dallas, delivered July 28, 2010) (not designated for publication).

[2] *Id*.

[3] 790 S.W.2d 568 (Tex. Crim. App. 1989).

Once he gained entry into the bathroom, however, he deliberately punched her once in the stomach with a closed fist.

At the end of her summation at the guilt phase of trial, in the course of urging the jury to credit Jennings's account of the altercation in the bathroom because it was consistent with content of the 911 recording, the prosecutor continued:

> What does she say?  What does she say?  Please, just don't hurt the baby.  Just leave.  Just go.  She doesn't want to.  She's not there to get him in trouble.  She's not trying to make it worse.  She's not trying to put on a big production.  She wants him to just get out.  She is there to protect her baby as mothers do.
>
> And he [the appellant] doesn't give two hoots about the mother of his baby or his baby because he looks her in the eye and punches her in her 38 week old stomach without remorse, just like he is today.

The appellant immediately objected that this argument constituted a comment on his failure to testify, but the trial court overruled the objection.  The jury found the appellant guilty, and he appealed.

## In the Court of Appeals

On appeal, the appellant argued, *inter alia*, that the trial court erred in overruling his objection to the prosecutor's argument as quoted above.  The court of appeals agreed with the appellant that the prosecutor's remark constituted an improper comment on his failure to testify because it called the jury's attention to the absence of evidence that only the appellant could supply.[4]  The prosecutor's remark, according to the court of appeals, could not be

---

4

 *Snowden*, *supra*, at *2.  Prosecutorial comment on an accused's failure to testify violates his state and federal constitutional privileges against self-incrimination.  *Moore v. State*, 849 S.W.2d

construed as a reference to a failure to provide evidence from a source other than the appellant, and there was no other testimony concerning the appellant's lack of remorse. After concluding that the trial court erred in overruling the objection, the court of appeals then proceeded to determine whether the error caused the appellant harm.

Because the error infringed upon the appellant's privilege against self-incrimination, and was thus of constitutional magnitude, the court of appeals analyzed the error under Rule 44.2(a) of the Texas Rules of Appellate Procedure.[5] In addition, in conducting its harm analysis, the court of appeals applied the factors for determining the harmfulness of constitutional errors that this Court identified in *Harris*. After reviewing the record and performing the harm analysis required by Rule 44.2(a), and specifically considering the *Harris* factors to aid in this undertaking, the court of appeals declared itself unable to conclude beyond a reasonable doubt that the trial court's error did not contribute to the appellant's conviction or punishment.[6] Therefore, the court of appeals reversed the trial

---

350, 351 (Tex. Crim. App. 1993). In order for a comment to violate a defendant's right against self-incrimination, the language used must be "manifestly intended or . . . of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). Under some circumstances, a comment concerning a defendant's lack of remorse constitutes a comment on the defendant's failure to testify. *Swallow v. State*, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992).

[5] *See* TEX. R. APP. P. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.").

[6] *Snowden*, *supra*, at *4.

court's judgment and remanded the cause for "further proceedings consistent with" its opinion—presumably a new trial.[7] We granted the SPA's petition for discretionary review to reconsider the propriety of the court of appeals's reliance on the *Harris* factors.

## THE *HARRIS* FACTORS

When a prosecutorial remark impinges upon an appellant's privilege against self-incrimination under the constitution of Texas or of the United States, it is error of constitutional magnitude.[8] When confronted with a constitutional error, a reviewing court must analyze the error under Rule 44.2(a), reversing the judgment unless it can conclude beyond a reasonable doubt that the error did not contribute to the defendant's conviction or punishment. In conducting an analysis for harm, *vel non*, under Rule 44.2(a), this Court has sometimes, but not always, utilized the factors we set out in *Harris*.[9]

*Harris* was decided in 1989, before the adoption of Rule 44.2 in 1997. At that time, former Rule 81(b)(2) governed, applying the same harmless-error standard—the constitutional harm analysis—regardless of whether the error was of constitutional

---

[7]

*Id.*

[8]

*Canales v. State*, 98 S.W.3d 690, 695 (Tex. Crim. App. 2003); *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001).

[9]

*See Mason v. State*, 322 S.W.3d 251, 257 n.10 (Tex. Crim. App. 2010) (rejecting uncritical reliance on all of the *Harris* factors for harmless-error analysis of non-constitutional error under Rule 44.2(b), while acknowledging that "the *Harris* factors might still be applicable in Rule 44.2(a) analyses").

magnitude.[10] In *Harris*, this Court found that the trial court erred in allowing the introduction of the defendant's extraneous offenses—a non-constitutional error. We then determined whether the erroneous introduction of those extraneous offenses should result in reversal under former Rule 81(b)(2), which we characterized as the "rhetorical and semantic equivalent of the harmless error standard announced by the Supreme Court for constitutional errors in *Chapman v. California*."[11] Under a constitutional harm analysis, a reviewing court must reverse unless it "concludes beyond a reasonable doubt that the error did not contribute to the conviction or the punishment assessed."[12]

What *Harris* found lacking, however, both in Supreme Court case law and from the face of Rule 81(b)(2) itself, were "objective standards that must be explored to reach a legally correct resolution."[13] More specifically, we noted an apparent ambivalence on the part of the Supreme Court with respect to the proper role of so-called "overwhelming

---

[10] *See* former TEX. R. APP. P. 81(b)(2) ("If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.").

[11] *Harris*, *supra*, at 584. *See Chapman v. California*, 386 U.S. 18, 24 (1967) ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.").

[12] *Harris*, *supra*, at 584.

[13] *Id*. at 585.

evidence" in the conduct of a constitutional harm analysis.[14]  While we ultimately acknowledged the proper role that the existence of overwhelming evidence may play in the determination whether an error can truly be said to have contributed to the conviction or punishment in a given case,[15] we rejected the proposition that a constitutional error may be deemed harmless simply because the reviewing court is confident that the result the jury reached was objectively correct or that, in any event, the jury could have reached the same

---

[14]

*Id*. at 586-87.  To a certain extent, the ambivalence we noted apparently continues, as evidenced by a comparison of Supreme Court cases decided since *Harris*.  *Compare Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) ("The inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.") *with Neder v. United States*, 527 U.S. 1, 17 (1999) ("[W]here a reviewing court concludes beyond a reasonable doubt that [an element of the offense that was erroneously omitted from the jury charge authorizing conviction] was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless."), *and Washington v. Recuenco*, 548 U.S. 212, 219-20 (2006) (same with respect to punishment-phase facts that must be determined by a jury).  *See also* Wayne R. LaFave, et al., 7 CRIMINAL PROCEDURE § 27.6(e) (3d ed. 2007), at 134 (noting that, since the constitutional harmless-error rule was originally recognized in *Chapman*, the Supreme Court "has appeared to move back and forth between relying heavily upon the presence of proof of guilt in its harmless error analysis, and considering that proof as less central to the inquiry").

[15]

*See, e.g., Yates v. Evatt*, 500 U.S. 391, 403-405 (1991) ("To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous.  * * *  To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.  * * *  Since that enquiry cannot be a subjective one into the jurors' minds, a court must approach it by asking whether the force of the evidence [apart from the error] is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of [the error].  It is only when the effect of [the error] is comparatively minimal to this degree that it can be said, in *Chapman*'s words, that [the error] did not contribute to the verdict rendered.").

result no matter how much the error may have facilitated that resolution.[16]   Instead, we repeatedly emphasized that Rule 81(b)(2) requires reviewing courts to focus, not upon the perceived accuracy of the conviction or punishment, but upon the error itself in the context of the trial as a whole, in order to determine the likelihood that it genuinely corrupted the fact-finding process.[17]

However, having concluded in *Harris* that the constitutional harmless-error standard should ultimately serve to vindicate the integrity of the fact-finding process rather than simply looking to the justifiability of the fact-finder's result, we nevertheless declared ourselves unable to articulate a hard and fast rule that would invariably accomplish this goal. The most we found we could do to effectively guide future harmless-error analyses was to "state a general formulation of what [Rule] 81(b)(2) requires, set out general considerations

---

[16]

*Harris*, *supra*, at 585 ("overwhelming evidence" test for harmless error "is incorrect because the language of the rule focuses upon the error and not the remaining evidence" and "dictates that a reviewing court's responsibility transcends determining whether the conviction was correct[,]" thus avoiding "substituting [the appellate court] for the trial court or the jury"); *id*. (inappropriate simply to inquire in a harmless-error analysis, "would the appellant have been convicted in any event?"); *id*. (quoting *Fahy v. Connecticut*, 375 U.S. 85, at 88 (1963), for the proposition that the harmless-error rule is "not concerned . . . with whether there was sufficient evidence on which the [accused] could have been convicted"); *id*. at 586 (noting that *Fahy* rejected a "correct result" standard for harmless error).

[17]

*Id*. at 587-88 ("In summary, a reviewing court in applying the harmless error rule should not focus upon the propriety of the outcome of the trial.  Instead, an appellate court should be concerned with the integrity of the process leading to the conviction.  * * * [T]he reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict.").

which may be relevant, and trust individual judges to use these observations in their personal

calculus."[18]  Along the way, we identified certain factors we deemed relevant in most cases:

> [T]he [reviewing] court should examine the source of the error, the nature of
> the error, whether or to what extent it was emphasized by the State, and its
> probable collateral implications. Further, the court should consider how much
> weight a juror would probably place upon the error. In addition, the Court must
> also determine whether declaring the error harmless would encourage the State
> to repeat it with impunity.[19]

Since the advent of Rule 44.2, we have rejected the applicability of some of these factors for

purposes of an analysis for harm, *vel non*, of non-constitutional error under Rule 44.2(b).[20]

The SPA now argues that at least some of those factors likewise do not belong in an analysis

of harm for constitutional error under Rule 44.2(a).  We agree with the SPA that at least some

of the specific *Harris* factors have no logical bearing on whether a particular constitutional

error "did not contribute to the verdict obtained."[21]  We think that the present case well

illustrates the point, and so we turn next to an examination of the court of appeals's

application of the *Harris* factors here.

## ANALYSIS

In concluding that the prosecutor's comment on the appellant's lack of remorse was

---

[18]
   *Id*. at 587.

[19]
   *Id*.

[20]
   *See* note 9, *ante*.

[21]
   *Chapman*, *supra*, at 24.

not harmless beyond a reasonable doubt, the court of appeals addressed each of the *Harris* factors in turn.[22] First, the court of appeals noted that the source of the error was the State, rejecting the State's argument that the prosecutor's argument might legitimately have been construed by the jury as a comment on the appellant's lack of remorse *as evidenced by his conduct at the time of the assault.*[23] Next, the court of appeals found that the nature of the error was an improper comment on the appellant's failure to testify, in derogation of "mandatory constitutional and statutory protections"—essentially just reiterating its conclusion that error of such a nature had occurred.[24] Addressing the extent to which the State may have emphasized the error, the court of appeals observed that, later, during her brief punishment-phase argument, the prosecutor asserted no fewer than four times that the appellant "doesn't care" what injury he may have caused the victim or her baby.[25] The court of appeals then repeated this observation in its analysis of the fifth and sixth *Harris* factors, the probable implications of the error and weight the jury likely would have placed upon it.[26] Finally, while expressly declining to attribute any "intentional misconduct or ill will on the

---

[22] *Snowden*, *supra*, at *3-4.

[23] *Id*. at *3.

[24] *Id*.

[25] *Id*.

[26] *Id*. at *4.

part of the State[,]" the court of appeals nevertheless, in addressing the last *Harris* factor, whether declaring the error harmless would encourage future misconduct by the State, declared itself "loathe to open the door to similar comments in other cases."[27]  Considering all of these factors together, the court of appeals was unable to conclude beyond a reasonable doubt that the error did not contribute to the appellant's conviction or punishment.[28]

We think the court of appeals's analysis serves to demonstrate the actual *dis*utility of several of the *Harris* factors.  To begin with, addressing the first factor, we fail to see how purporting to identify the State as the "source" of constitutional error reveals anything about whether, or to what extent, the error may have contributed to the conviction.  The *parties* do not ordinarily commit error; the *trial court* does, whenever it acts, or fails to act, over the legitimate objection of a party or it conducts trial proceedings in a manner inconsistent with a constitutional or statutory requirement that is not optional with the parties.[29]  That in a particular instance the trial court committed error at the behest of the State does not ordinarily tell a reviewing court anything useful about the corrupting impact the error may

---

[27] *Id.*

[28] *Id.*

[29] *See Marin v. State*, 851 S.W.2d 275, 278-80 (Tex. Crim. App. 1993) (appealable errors fall into three categories: 1) violation of forfeitable rights, which must be preserved for appeal by timely and specific objection; 2) violation of rights that must be expressly waived, which may be vindicated on appeal in the absence of such a waiver; and 3) violation of a systemic prohibition or requirement not optional with the parties at trial, which may always be remedied on appeal, regardless of waiver or forfeiture).

have had on the fact-finder's deliberative function. It smacks, instead, of a purely punitive impulse. But punishing the party responsible for leading the trial court into error is not the same thing as, and is not a logical component of, calculating the influence that error had upon the fact-finder's decision-making process.

For essentially the same reason, we fail to see the utility of the last *Harris* factor, namely, whether declaring the error harmless would encourage repeat performances by the State. As Judge Clinton remarked in his separate opinion in *Higginbotham v. State*, the harmless-error standard was never intended to satisfy any punitive, deterrent, or remedial purpose.[30] While *Harris* appropriately focused on the integrity of the process by which convictions and punishments are obtained, it erred to include within its ambit any concern for the integrity of *future* trials. The harmless-error inquiry under Rule 44.2(a) should adhere strictly to the question of whether the error committed in a particular case contributed to the verdict obtained *in that case*. The court of appeals was misled to the extent that it relied upon the first and last of the *Harris* factors, which we now expressly disavow.

The remaining *Harris* factors—the nature of the error (*e.g.*, erroneous admission or exclusion of evidence, objectionable jury argument, *etc.*), whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely have

---

[30]

807 S.W.2d 732, 739-40 (Tex. Crim. App. 1991) (Clinton, J., concurring) ("While one can only surmise what *Harris* means by '*the source* of the error,' . . . surely it does not include subjective intent of the prosecutor in the case. The harmless error rule is not an exclusionary device to deter prosecutorial overreaching or police misconduct.").

assigned to it in the course of its deliberations—remain as viable considerations in deciding whether trial error of a constitutional dimension contributed to the conviction or punishment in many cases. But they are not *exclusive* considerations in any particular case; many other considerations may logically serve to inform a proper harm analysis in a given case. On the other hand, not every remaining *Harris* factor will invariably have logical application with respect to every conceivable constitutional error that may be subject to an analysis for harm. At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether "beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment."[31]

---

[31]

TEX. R. APP. P. 44.2(a). There is no set formula for conducting a harm analysis that necessarily applies across the board, to every case and every type of constitutional error. Perhaps the most that can be said is that what *Harris* called the "nature" of the constitutional error will frequently suggest, and sometimes dictate, other relevant considerations in an appropriate harm analysis. For example, in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), the constitutional error was the *exclusion* of evidence, rather than the erroneous *admission* of evidence, in violation of the Sixth Amendment Confrontation Clause. "The correct inquiry" for whether the *exclusion* of evidence in violation of the Confrontation Clause is harmless, the Supreme Court announced, "is whether, assuming that the damaging potential of the [excluded evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Id*. at 684. After indulging this preliminary assumption, however, an appellate court should go on to examine "a host of factors" that are relevant to many harmless error analyses and are

> all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id*.; *see also Davis v. State*, 203 S.W.3d 845, 850 (Tex. Crim. App. 2006) ("Most of these factors apply regardless of whether the constitutional error was in the admission or exclusion of evidence.").

In this particular case, we do not believe that the court of appeals erred to take the remaining *Harris* factors into account. How emphatically the prosecutor invited the jury to consider the appellant's failure to testify, whether he repeated the invitation once the appellant's objection was overruled, and how much heft the jury would likely have placed upon that invitation in light of the weight and character of the State's evidence in the case, are certainly relevant questions here. However, we believe the court of appeals was ultimately mistaken in its assessment of these remaining factors. Specifically, in addressing each of these factors, the court of appeals assigned undue significance to the fact that the prosecutor, during her later summation at the punishment phase, continued to emphasize that the appellant "doesn't care" about the consequences of his actions.[32]

Our conclusion that the court of appeals mis-analyzed the remaining factors stems from a disagreement with that court about the true scope of the error that actually occurred. Unlike the court of appeals, we accept the State's appellate assertion that at least a *portion* of the prosecutor's contested guilt-phase argument in fact constituted a legitimate summary of the evidence or, failing that, an invitation to draw a reasonable inference from the

---

Constitutional errors of a different nature, however, such as a burden-shifting jury instruction that violates due process, may call for a somewhat narrower set of considerations, relevant strictly to the question "whether the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption." *Yates*, *supra*, at 404. *See also Neder*, *supra*, at 18-19 (where jury charge omits an essential element of the offense, constitutional defect may yet be declared harmless if it appears from the record that the prosecution's evidence overwhelmingly established the omitted element and the "defendant did not, and apparently could not, bring forth facts contesting" it).

[32] *Snowden*, *supra*, at *3.

evidence.[33]  Jennings had testified that, on the drive home from the library and in the bathroom, the appellant had struck her in the face as many as six times in all, albeit without enough force to really hurt her.  But once the appellant barged into the bathroom:

Q.  Did he punch you in the stomach?

A.  Yes.

Q.  How did he punch you in the stomach?

A.  With a closed fist.

Q.  Where on your stomach did he punch you?

A.  Right above my belly button.

Q.  Is there – is it possible that he could have accidently punched you in the stomach?

A.  No.

Q.  Why not?

A.  Because he lifted his fist up, and he looked at me, and he just drew forward.

In our view, this and other testimony in the record amply supports the prosecutor's guilt-

---

[33] The SPA did not seek, and we did not grant, discretionary review in this cause in order to address the question whether the court of appeals was mistaken to conclude that error actually occurred.  Nevertheless, as part of its analysis of the *Harris* "source" factor for ascertaining harm, the court of appeals explicitly rejected the State's argument that the prosecutor's challenged summation constituted a legitimate invitation to infer an absence of remorse from the circumstances of the offense itself.  *See id*. ("In essence, the State seeks to have us infer a lack of remorse from the commission of the crime itself.  According to the State, because appellant's actions evidence a lack of remorse, the jury could have interpreted the prosecutor's comment as a reference to this evidence.").  In light of this aspect of the court of appeals's harm analysis, we deem the question of the true scope of the error that occurred to be embedded within SPA's ground for review.

phase argument, at least to the extent that she asserted that the appellant "doesn't give two hoots about the mother of his baby or his baby because he looks her in the eye and punches her in her 38-week-old stomach without remorse[.]"

Of course, this is not to reject the court of appeals's conclusion that a constitutional error occurred. The prosecutor clearly overreached when she continued her summation with the assertion that the appellant's lack of remorse at the time of the assault was "just like he is today." Whether the appellant was *presently* remorseful as he sat in the courtroom was a circumstance that only he could have testified to; a jury is not entitled to infer as much from its impression of his courtroom demeanor.[34] Therefore, the prosecutor's remark about the appellant's lack of remorse in the courtroom was an objectionable comment on the appellant's failure to testify because it highlighted for the jury the appellant's failure to take the stand and claim present remorse. But the inference that the appellant experienced no remorse at the time that he punched Jennings in the stomach was circumstantially supported by the record, and it was only *this* lack of remorse that the prosecutor re-emphasized in her later punishment-phase summation. She argued:

---

[34]

We have held that prosecutorial comments on a defendant's lack of remorse based solely on his in-court demeanor constitutes an impermissible comment on his failure to testify. *Dickinson v. State*, 685 S.W.2d 320 (Tex. Crim. App. 1984); George E. Dix & John M. Schmolesky, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 45:24 (3d ed. 2011). *Cf. Archie v. State*, 340 S.W.3d 734, 740 (Tex. Crim. App. 2011) (prosecutor's question directed at defendant in courtroom during final summation asking, "Do you still hear [a witness to the murder] screaming, Trent?" was an improper comment on the defendant's failure to testify inasmuch as it called for a present-sense impression that only the defendant himself could supply).

We also have to look at [Jennings's] testimony, if you can recall it. I know it's a few days ago. But if you can, recall her testimony and recall some of the things that she said so that we can try to get a picture of what kind of man we're talking about, what kind of man this is.

Remember, [Jennings] said – she told him, I feel like I'm going into labor. He doesn't care. He says, if you get out of the car, I'm going to run you over. What else does she say?

She says, I think I'm going into labor. I think I'm going to pass out. He says, you know what, good. I hope you pass out. Then I can cut the baby out of you and leave you here for dead. Okay? Remember those things that she said.

Remember that on the 911, remember all that he cared about during the whole thing – he didn't care if she was going into labor. He didn't care. But he just looked her in the eye and intentionally punched her in the stomach, not just her head, not just her arms, but in the stomach where his baby lived. He punched her there looking her in the eye.

And remember, she's going through all this. She's in pain. She's doubled over, and he says – all he says is, did you call the police on me? Did you call the police on me? He doesn't care about her. He only cares about himself and what's about to happen to him, not what's about to happen to this sweet little baby and his girlfriend.

All of this argument was supported by Jennings's testimony, and it merely called attention to the appellant's quite evident lack of remorse at the time of the offense. None of it served to reinforce the prosecutor's earlier guilt-phase argument that had improperly invoked the appellant's failure to take the stand to testify about his *present-sense* lack of remorse during the trial itself. We therefore reject the court of appeals's assertion that the punishment-phase argument "underscored" the prosecutor's improper guilt-phase allusion to the appellant's

failure to take the witness stand and assert his remorse at the time of trial.[35]

To the extent that the trial court erred, therefore, it erred only in failing to sustain the appellant's objection to that part of the prosecutor's summation directing the jury to consider the appellant's lack of present, in-court remorse. *This* error was isolated, and was imbedded within a legitimate argument that invited the jury to draw an inference of lack of remorse at the time of the offense, an inference that could reasonably be derived from the evidence at trial. The *illegitimate* inference—that the jury should also hold the appellant's apparent lack of courtroom remorse against him, in derogation of his constitutional right to remain silent—was never repeated or emphasized. Moreover, a jury that was legitimately invited to consider the appellant's apparent remorselessness at the time of the offense was not likely to have been substantially prejudiced by an additional comment on his present lack of remorse. The evidence against the appellant was substantial, if not overwhelming. The case essentially boiled down to whether the jury found Jennings's testimony credible in light of the defensive posture that she had a motive to falsely accuse the appellant in retaliation for his infidelity. A jury that did *not* believe Jennings would have no reason to hold the appellant's lack of courtroom remorse against him; a jury that *did* believe Jennings would not likely find it necessary to resort to the prejudice inherent in a comment on his failure to express courtroom remorse to convict him. In short, the precise error in this case, in our view, did not move the jury from a state of non-persuasion to a state of persuasion on any

---

[35] *Snowden*, *supra*, at *3.

material issue in the case;[36] nor is it reasonably likely to have caused such prejudice as to distract the jury or divert it from its proper fact-finding role. We are persuaded to a level of confidence beyond a reasonable doubt that it made no contribution to the jury's determination that the appellant was guilty of assaulting Jennings.

It is at least conceivable that the prosecutor's comment on the appellant's lack of in-court remorse could have influenced the jury in another way at the guilt phase of trial. In order for the jury to find that the simple assault the appellant committed against Jennings constituted a third-degree felony, the jury had to find that Jennings was a member of his family or household at the time of the assault, and that he had previously been convicted of a similar family-violence offense.[37] The information alleged that the appellant had been convicted of family-violence assault in cause number 02-290-K26 in Williamson County on May 31, 2002, and the State introduced the judgment reflecting this conviction into evidence at the conclusion of its presentation of evidence at the guilt phase of trial. The appellant did not challenge the fact of his prior conviction. Perhaps it is possible that the jury could have considered the appellant's lack of in-court remorse in some kind of subliminal way as evidence buttressing his status as a repeat family/household-violence offender. We regard this possibility, however, as exceedingly remote. We conclude beyond a reasonable doubt that the error in allowing the prosecutor to comment on the appellant's lack of in-court

---

[36] *E.g.*, *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010).

[37] Tex. Penal Code § 22.01(b)(2).

remorse was simply "unimportant in relation to everything else the jury considered on the issue" of whether the appellant was previously convicted of family-violence assault.[38]

Nor, finally, do we regard the error as harmful with respect to punishment. The appellant received a two-year sentence and no fine—the absolute minimum punishment he could have received for this third-degree conviction.[39] The jury heard substantial evidence, in addition to the specific 2002 conviction in Williamson County, of the appellant's prior history of family violence and could also legitimately have considered his apparent lack of remorse at the time he committed the instant offense, yet still chose to impose the least punishment available. Under these circumstances, we are satisfied beyond a reasonable doubt that any residual prejudice emanating from the prosecutor's illegitimate guilt-phase remark that called the jury's attention to the appellant's lack of in-court remorse contributed not at all to its assessment of his punishment.

## CONCLUSION

Accordingly, we reverse the judgment of the court of appeals and remand the cause to that court to address the appellant's remaining point of error.

DELIVERED: September 28, 2011
PUBLISH

---

[38] *Yates*, *supra*, at 403.

[39] TEX. PENAL CODE § 12.34.