**Opinion issued November 21, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00029-CR

———————————

**JIMMY HAROLD GREEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Case No. 10CR3171**

## MEMORANDUM OPINION

The jury found appellant guilty of the third-degree felony offense of driving while intoxicated.[1] Appellant waived his right to a contested punishment hearing and pleaded true to two felony enhancement allegations. Once the trial court accepted the plea, appellant's punishment status was changed to that of a habitual

---

[1] *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09 (Vernon Supp. 2012).

offender. As a result, the punishment range increased to imprisonment for life or a term of not more than 99 years or less than 25 years.[2] Appellant agreed to 25 years in prison, and the trial court sentenced him accordingly.

In three issues, appellant challenges the sufficiency of the evidence to support the judgment of conviction for the primary offense of felony driving while intoxicated and complains of two evidentiary rulings by the trial court.

We affirm.

### Background Summary

At around 2:00 a.m. on October 17, 2010, Marcus Taylor arrived at his League City home. As he pulled into his driveway, Taylor noticed a motorcycle and a man lying in the street next to the motorcycle. The motorcycle was lying on its side. Taylor observed that the motorcycle's headlight was turned on, and the motorcycle's back wheel was spinning. Taylor walked over to check on the man, who was later identified as appellant. Taylor saw that appellant was alive but appeared disoriented. Taylor called 9-1-1.

Within five minutes, the ambulance arrived. League City paramedic Tiffany Lester treated appellant at the scene. When she arrived at the scene, Lester saw appellant sitting on his motorcycle. While treating him, Lester noted that appellant had an abrasion on his left elbow. Lester also observed, and later testified, that

---

[2] *See* TEX. PEN. CODE ANN. § 12.42(d) (Vernon 2011).

appellant's "speech was slurred," "his gait was a little altered," "his pupils were irregular," and "he smelled like alcohol." Based on her training and experience as a paramedic, Lester believed that appellant was intoxicated.

Approximately five minutes after the ambulance had arrived, League City police officer G. Yates reached the scene. Officer Yates saw appellant sitting on his motorcycle and asked him to get off the motorcycle. Officer Yates assisted appellant in walking over to the ambulance to be treated.

After appellant was treated, Officer Yates spoke with appellant. Appellant told Officer Yates that a black SUV had cut him off, causing him to lose control of the motorcycle. The officer asked appellant how much he had to drink. Appellant responded, "Too much." In observing appellant, Officer Yates formed the belief that appellant was intoxicated. The officer later testified that he could smell the odor of alcohol on appellant's breath. Officer Yates observed that appellant's eyes were red and bloodshot and that his pupils were of unequal size.

Officer Yates asked appellant whether he would undergo field sobriety tests. Appellant refused to perform the tests. Officer Yates took appellant into custody for the offense of driving while intoxicated. Officer Yates's patrol car had a video and audio recording device, which recorded a portion of what had occurred at the scene and also what transpired after appellant was placed in the patrol car. Officer

3

Yates informed appellant of his *Miranda* and statutory rights before transporting appellant to city jail.

Once at the jail, Officer Yates requested appellant to give a breath sample for alcohol-concentration analysis. Appellant refused to give a sample. The officer informed appellant of the consequences of refusing to give a specimen.

Officer Yates ran a criminal history on appellant. It was determined that, under state law, appellant was required to give a blood sample because he had two prior convictions for driving while intoxicated.[3]

A blood sample was taken from appellant approximately five-and-one-half hours after he had been found lying in the street by his motorcycle. The blood sample was sent to the Texas Department of Public Safety Crime Lab in Houston where it was analyzed by forensic scientist Robert Prince. Prince determined that the sample taken from appellant contained 0.19 grams of alcohol per 100 milliliters of blood.

Appellant was indicted for the offense of felony driving while intoxicated. The indictment also contained two enhancement paragraphs, alleging that appellant had been previously convicted of two separate felony offenses of burglary.

---

[3] *See* TEX. TRANSP. CODE ANN. § 724.012(b)(3).

4

Appellant stipulated that he had been convicted of two prior offenses of driving while intoxicated, elevating the instant offense to a felony. The jury was informed of the stipulation.

During the guilt-innocence phase, the State offered the testimony of Marcus Taylor. He described for the jury how he found appellant lying in the street next to his motorcycle. Taylor testified that the motorcycle's headlight was on and that the back wheel of the motorcycle was spinning. He said that appellant appeared disoriented.

Officer Yates testified for the State. Through Officer Yates, the State offered the patrol-car video recording, which showed, inter alia, appellant's demeanor and other events that had transpired at the scene and in the patrol car following appellant's arrest. Appellant objected to the portions of the recording depicting statements he made after he had been read his *Miranda* rights. Appellant asserted that, due to his intoxication, he was not able to knowingly and voluntarily waive those rights.

Following a hearing, the trial court overruled the objection and the videotape was published to the jury. On the videotape, appellant can be heard to state that he was cut off by a black SUV, causing him to hit the curb. He also admits to Officer Yates that he has had too much to drink to be driving.

5

Paramedic Tiffany Lester also testified, stating that she believed appellant was intoxicated. She described appellant's physical condition and demeanor supporting her belief. The State also introduced the testimony of League City police officer G. Rivas, who had arrived at the scene after Officer Yates had arrived. Like Officer Yates and Paramedic Lester, Officer Rivas provided a description of appellant's demeanor and actions indicating that he was intoxicated. Officer Rivas stated that appellant had slurred speech and poor balance. She observed that appellant appeared confused and had difficulty answering questions. She testified that Officer Yates had to repeat his questions several times before appellant would answer.

Through forensic scientist Robert Prince, the State introduced the results of the analysis conducted on appellant's blood sample collected five-and-one-half hours after appellant was found by Taylor in the street. Prince told the jury that the blood sample showed that, at the time of collection, appellant's blood contained 0.19 grams of alcohol per 100 milliliters. Prince explained to the jury that the State of Texas designates a 0.08 blood alcohol concentration as the legal level of intoxication. Prince also explained how the average person metabolizes alcohol.

The State then asked Prince a hypothetical question regarding retrograde extrapolation calculation if a blood sample were taken, as here, at least five and one-half hours after a certain time. Appellant objected to the question on the basis

6

that such testimony would not be relevant because Prince did not know when appellant had his last drink, information necessary to conduct a retrograde extrapolation analysis. After conducting a hearing on the issue, the trial overruled appellant's objection and permitted Prince to testify regarding the hypothetical scenario.

At trial, appellant did not dispute that he was intoxicated at the time he was treated by Paramedic Lester or when he interacted with Officer Yates. Instead, appellant asserted that there was no evidence to show that he was intoxicated when he was operating the motorcycle. In his opening statement, appellant told the jury that the evidence would show that he became intoxicated after he overturned his motorcycle. He stated that the evidence would show that, after he was run off the road, he walked to the store and bought a 40 ounce malt liquor that he drank at the scene before being found by Marcus Taylor. Appellant elicited testimony from Taylor indicating that a gas station was nearby the scene that sold alcohol. However, appellant never offered any other evidence to show that he had gone to the store, purchased alcohol, and then drank it at the scene.

The jury implicitly rejected appellant's theory when it found him guilty of the felony offense of driving while intoxicated. Appellant pleaded true to the indictment's two enhancement allegations making him a habitual offender for sentencing purposes. Appellant waived his right to a contested punishment

7

hearing. In accordance with an agreement reached with the State, the trial court sentenced appellant to 25 years in prison.

Appellant now appeals. He presents three issues.

**Sufficiency of Evidence**

In his first issue, appellant contends that the evidence was insufficient to show that he was guilty of the offense of driving while intoxicated.

**A.     Standard of Review**

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See id.* Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. at 2786, 2789 n. 1, 2789; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

9

**B. Law of the Offense**

A person commits the offense of driving while intoxicated ("DWI") "if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2011). If a person has two previous DWI convictions, the offense is a felony of the third degree. *Id*. § 49.09(b)(2). As mentioned, appellant stipulated that he had two prior DWI convictions. As relevant to this case, "intoxicated" is defined in the Penal Code to mean "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . or any other substance into the body" or as "having an alcohol concentration of 0.08 or more." *Id*. § 49.01(2)(A)–(B) (Vernon 2011).

**C. Analysis**

The Penal Code requires the State to prove that a defendant was intoxicated at the time he was operating the motor vehicle in a public place. *See Warren v. State*, 377 S.W.3d 9, 14 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing PENAL CODE ANN. § 49.04(a)). On appeal, appellant contends that there was no direct evidence showing he was intoxicated at the time he was operating the motorcycle.

The Court of Criminal Appeals has recognized that "in order for the evidence to be sufficient to support a conviction for driving while intoxicated,

10

there must be a temporal link between a defendant's intoxication and his driving." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). In other words, there must be some evidence showing a temporal connection between the time of the defendant's intoxication and the time of his driving. *See Stoutner v. State*, 36 S.W.3d 716, 721 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *Weaver v. State*, 721 S.W.2d 495, 498–99 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd). Nonetheless, a conviction for driving while intoxicated may be supported solely by circumstantial evidence, which is as probative as direct evidence. *Kuciemba*, 310 S.W.3d at 462.

Here, the State presented evidence that appellant had been driving the motorcycle. The evidence also showed as follows: (1) appellant owned the motorcycle; (2) appellant told Officer Yates that he had been cut off by a black SUV, and as a result, had hit the curb with his motorcycle; (3) when Officer Yates hit the curb with his patrol car while turning around, appellant commented that Officer Yates had hit the curb just as he had done earlier; and (4) Marcus Taylor found appellant lying next to the motorcycle; and (5) appellant lived on the other side of Houston from where the incident occurred.

From this evidence, the jury reasonably could have inferred that appellant was operating the motorcycle when it hit the curb and overturned in the street. *See Weems v. State*, 328 S.W.3d 172, 177 (Tex. App.—Eastland 2010, no pet.)

11

(concluding that evidence was legally sufficient to show appellant was driving vehicle when it was a vehicle he typically drove and he had it on the night of the accident, he was found four-tenths of a mile from accident in rural area, and police officers and EMS personnel did not see anyone else at the accident scene or in surrounding area); *Turner v. State*, 877 S.W.2d 513, 515–16 (Tex. App.—Fort Worth 1994, no writ) (holding sufficient evidence that appellant drove vehicle when he was found standing next to vehicle within minutes of city power outage caused by damage to transformer in path of vehicle; steam was spewing from under hood of vehicle, indicating accident had just happened; and accident happened late at night so that there were no other possible drivers seen in the area).

The evidence was also sufficient to show that appellant was intoxicated. In this case, the jury was authorized to find that appellant was intoxicated if his blood alcohol concentration was 0.08 or more *or* if he did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body. *See* TEX. PENAL CODE ANN. § 49.01(2).

The State offered the following evidence showing that, at the scene, appellant did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body: (1) Paramedic Lester testified that appellant's "speech was slurred," "his gait was a little altered," "his pupils were irregular," and "he smelled like alcohol"; (2) Officer Yates testified that he smelled

12

alcohol on appellant's breath, observed that appellant's eyes were red and bloodshot, and that his pupils were of unequal size; (3) Officer Yates also testified that when he asked appellant how much he had to drink, appellant responded, "Too much"; (4) Officer Rivas testified that appellant had slurred speech, poor balance, appeared confused, and had difficulty answering Officer Yates's questions, needing them to be repeated before answering; (5) appellant refused to perform field sobriety tests; and (6) on the videotape, appellant admits that he has had too much to drink to be driving. From this evidence, the jury could have reasonably inferred that appellant was intoxicated at the time the paramedics and police arrived at the scene shortly after Taylor had found appellant lying in the street next to his motorcycle. *See Cotton v. State*, 686 S.W.2d 140, 142–43 & n.3 (Tex. Crim. App. 1985) (noting evidence of intoxication may include, among other things, slurred speech, bloodshot eyes, the odor of alcohol on the person, and unsteady balance or a staggered gait); *Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.— Houston [1st Dist.] 2000, pet. ref'd) ("The testimony of a police officer that an individual is intoxicated is probative evidence of intoxication.").

We now turn to the significant issue in this case: whether the State offered sufficient evidence to temporally link appellant's intoxication with his operation of the vehicle. Relevant to this issue, the evidence showed as follows: (1) Taylor found appellant lying in the street next to appellant's motorcycle; (2) although he

did not remember if its engine was running, Taylor observed that the motorcycle's back wheel was spinning and its headlight was on; (3) Taylor immediately called 9-1-1; (4) Paramedic Lester arrived at the scene about five minutes after Taylor's call; (5) as described *supra*, Lester testified regarding appellant's physical demeanor, indicating he was intoxicated; (6) approximately five minutes after Lester arrived, Officer Yates arrived and observed appellant exhibiting signs of intoxication, as discussed *supra*; and (7) Officer Rivas arrived soon after Officer Yates arrived and also noted that appellant was exhibiting signs of intoxication.

Additionally, the Court of Criminal Appeals has explained that "[b]eing intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident, and the inference of causation is even stronger when the accident is a one-car collision with an inanimate object." *Kuciemba*, 310 S.W.3d at 462. Here, Officer Yates testified that appellant said that "a black SUV had cut him off and that he had wrecked the motorcycle, laid the motorcycle over." Appellant can be heard in the videotape making a similar statement. Officer Yates also stated that appellant had indicated to him that appellant had hit the curb with his motorcycle. The evidence also showed that the motorcycle's signal light was damaged and that appellant had an abrasion on his elbow.

14

In short, the evidence indicated that appellant had been in a minor accident with his motorcycle. The only evidence that another vehicle had been involved was appellant's statement to Officer Yates. The jury was free to disbelieve the statement and infer that it was a single vehicle accident. In any event, appellant's intoxication at the scene of the accident is circumstantial evidence that he was intoxicated when the accident occurred and evidence that his intoxication caused the accident. *See id.*

Appellant also points to evidence in the record that he asserts undermines an inference that he was intoxicated at the time he was operating the motorcycle. He points out that Officer Yates initially claimed that he saw appellant trying to start the motorcycle at the scene, but then the officer acknowledged that he only saw appellant sitting on the motorcycle. Appellant cites evidence in the record that the key to appellant's motorcycle was never found. And he points to testimony indicating that the back wheel of a motorcycle can spin even when the motorcycle's engine is off, if the motorcycle is in neutral.

While such evidence may have aided appellant's defense, ample evidence, as discussed *supra*, exists in the record to support a finding that appellant operated the motorcycle while he was intoxicated. Evidence in the record indicates that the accident had just occurred. Specifically, the back wheel on the motorcycle was still spinning and the headlight was turned on. Appellant was lying in the street

15

next to his motorcycle. He appeared confused but was conscious. Approximately five minutes later Paramedic Lester arrived, and approximately 10 minutes later Officer Yates arrived. A few minutes later Officer Rivas arrives at the scene. All three gave testimony indicating that appellant did not have normal use of his mental and physical faculties; that is, appellant was intoxicated.

It was the jury's responsibility to weigh the evidence pertinent to whether appellant operated a motor vehicle while intoxicated and to draw reasonable inferences from that evidence. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. We cannot conclude that the jury's implied finding that appellant operated the motorcycle while intoxicated is irrational. Rather, such a finding is a reasonable inference that could have been drawn from the evidence.

Moreover, the State was not required to refute appellant's theory that he became intoxicated after the accident by drinking alcohol at the scene before he was found by Taylor. The State is no longer required to exclude all reasonable hypotheses except that of a defendant's guilt when a conviction is based on circumstantial evidence. *See Geesa v. State*, 820 S.W.2d 154, 160–61(Tex. Crim. App. 1991) *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). In any event, the State offered evidence showing that no alcohol containers were found at the scene.

Viewing all the evidence in the light most favorable to the jury verdict, we conclude that a rational fact finder could have found, beyond a reasonable doubt, all of the essential elements of the charged offense of driving while intoxicated. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. More precisely, the jury could have found, beyond a reasonable doubt, a temporal link between appellant's intoxication and his operation of the motorcycle. *See Kuciemba*, 310 S.W.3d at 462. We hold that the evidence is sufficient to support the judgment of conviction.

We overrule appellant's first issue.

**Suppression of Statements in Videotape Made After *Miranda* Warnings**

In his second issue, appellant contends that the trial court abused its discretion when it did not suppress his statements in the videotape following Officer Yates's informing appellant of his *Miranda* rights. Appellant contends that he did not knowingly and intelligently waive those rights because he was intoxicated. The trial court conducted a hearing outside the presence of the jury to determine this issue. Officer Yates and appellant testified. The trial court also viewed the videotape.

Officer Yates testified that appellant indicated that he understood the rights that had been read to him. Officer Yates also testified that appellant appeared coherent. In contrast, appellant testified that he did not understand the rights that had been read to him because he was "inebriated."

17

The videotape shows Officer Yates informing appellant of his rights while appellant is seated in the back of the patrol car. Appellant interrupts the officer several times stating that he had never, in the past, had these rights read to him. Appellant tells Officer Yates that he does not need to read him his rights. When Officer Yates finishes informing appellant of his rights, appellant indicates that he understood them.

After reading appellant his rights, Officer Yates informs appellant about how his motorcycle and belongings will be handled. The two discussed how nice the motorcycle looks, and the officer tells appellant that it appears only the signal indicator light on the motorcycle has been damaged. Appellant asks Officer Yates if he may smoke, and the officer tells appellant that he may not smoke now that he is in handcuffs. Appellant asks the officer what he is "getting him for." Before Officer Yates answers, appellant blurts out that he was not riding the motorcycle. Officer Yates then asks appellant whether he had not stated earlier that an SUV had cut him off. Appellant indicates that he had not said that. Officer Yates tells appellant he has a witness that saw him "leaned over" on his motorcycle. Officer Yates informs appellant that he has been arrested for driving while intoxicated. Officer Yates states that he has several witnesses who saw appellant driving the motorcycle. Appellant does not respond to the officer's statement. Appellant asks where he is being taken, and the officer says that he is being taken to jail.

18

Appellant also asks the officer to give him a "break." Officer Yates says that he cannot do that.

In *Miranda v. Arizona*, the United States Supreme Court held, "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966). The Texas Legislature has codified these procedural safeguards in the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22. Specifically, article 38.22, section 3 prohibits admission of an accused's oral statement made as a result of custodial interrogation unless, among other requisites, the *Miranda* warnings and one additional warning set out in article 38.22 were given, and the accused knowingly, intelligently, and voluntarily waived any rights set out in the warnings. *See id*. § 3(a).

Regardless of whether appellant was prevented from knowingly and intelligently waiving his rights due to his intoxication, the only statement that can be construed to result from interrogation after he was informed of his rights is appellant's denial that he had previously told Officer Yates that he was cut off by an SUV. *See Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689–90 (1980) (defining "interrogation" for *Miranda* purposes as "express questioning" or "any words or actions on the part of the police (other than those normally attendant

19

to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response").

Assuming, without deciding, that the admission of this statement was admitted in violation of appellant's *Miranda* rights, we conclude that the trial court's failure to suppress the statement was harmless error. When confronted with a constitutional error, such as this, a reviewing court must reverse the judgment unless it can conclude, while taking into account any and every circumstance apparent in the record, that the error did not contribute to the defendant's conviction or punishment beyond a reasonable doubt. *Snowden v. State*, 353 S.W.3d 815, 818, 822 (Tex. Crim. App. 2011) (citing TEX. R. APP. PROC. 44.2(a)).

Our harm review for constitutional errors is controlled by the Court of Criminal Appeals's analysis in *Snowden*, 353 S.W.3d at 822. We consider (1) the nature of the error, (2) the extent it was emphasized by the State, (3) the probable implications of the error, and (4) the weight the jury would likely have assigned to it in the course of the deliberations. *See id*. These factors are not exclusive; other considerations may logically inform our harm analysis. *See id*. The *Snowden* court emphasized, "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether beyond a

20

reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Id.* (quoting TEX. R. APP. P. 44.2(a)).

Applying these factors, we conclude beyond a reasonable doubt that the admission of appellant's statement denying that he had earlier told Officer Yates that he had been cut off by an SUV did not contribute to his conviction. At the beginning of the tape, appellant is heard telling Officer Yates how a black SUV caused him to hit the curb and fall over on his motorcycle. Appellant's denial that he had previously told Officer Yates that he had been cut off the road by a black SUV was not relied on by the State. To the contrary, the State used appellant's statement that he had been cut off by an SUV to show that appellant had been operating the motorcycle. In its closing statement, it is the defense who references appellant's denial that he had been driving the motorcycle and points out that Officer Yates was not being truthful when he told appellant that he had "several witnesses" who saw appellant driving. If anything, this portion of the videotape may have helped appellant's defense because it allowed the defense to highlight that no one saw appellant operating the motorcycle.

In any event, we can ascertain no meaningful implications of admitting appellant's denial that he had earlier told Officer Yates that an SUV ran him off the road. Such statement may have affected how the jury viewed appellant's credibility. However, appellant had voluntarily and spontaneously denied being on

21

the motorcycle before Officer Yates asked him whether he had earlier stated that an SUV caused the accident. In fact, this spontaneous denial is what prompted Officer Yates to ask appellant about what he said earlier regarding the SUV. In other words, appellant had already denied operating the motorcycle *before* Officer Yates questioned him about it. When read in context, it is unlikely the jury assigned much weight to appellant's denial of his earlier claim regarding the SUV.

Assuming that the trial court erred by overruling appellant's request to suppress appellant's post-*Miranda* statements in the videotape, we conclude that any error did not move the jury from a state of non-persuasion to a state of persuasion on any material issue in the case. *See Snowden*, 353 S.W.3d at 825 (citing *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010)). Nor is such error "reasonably likely to have caused such prejudice as to distract the jury or divert it from its proper fact-finding role." *See id*. We are persuaded to a level of confidence beyond a reasonable doubt that it made no contribution to the jury's determination that the appellant was guilty of driving while intoxicated. *See id.* We hold that any error by the trial court in denying appellant's motion to suppress was harmless error. *See* TEX. R. APP. P. 44.2(a).

We overrule appellant's second issue.

22

**Retrograde Extrapolation**

In his third issue, appellant contends that the trial court abused its discretion when it permitted Robert Prince, the State's forensic scientist, to testify regarding the application of retrograde extrapolation to a hypothetical situation.

Retrograde extrapolation is the computation back in time of the blood alcohol level; that is, it is the estimation of the blood alcohol level at the time of driving based on a test result from some later time. *Mata v. State*, 46 S.W.3d 902, 908–09 (Tex. Crim. App. 2001). In *Mata*, the Court of Criminal Appeals explained that a trial court considering the reliability of retrograde extrapolation should consider (1) the length of time between the offense and the test(s) administered; (2) the number of tests given and the length of time between each test; and (3) whether, and to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation. *Id.* at 916. These characteristics and behaviors might include, but are not limited to, the person's weight and gender, the person's typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day or night in question, what the person drank, the duration of the period of drinking, the time of the last drink, and how much and what the person had to eat. *Id.* The court noted that "[t]he expert's ability to apply the science and explain it with clarity to the court is a paramount consideration." *Id.* The expert must also demonstrate some

23

understanding of the difficulties, subtleties and risks inherent in the science, and he must be able to clearly and consistently apply it. *Id.*

Hypothetical questions are sometimes employed to assist the trier of fact to understand the evidence or to determine a fact in issue. *See, e.g., Taylor v. State*, 106 S.W.3d 827, 832–33 (Tex. App.—Dallas 2003, no pet.); *see also* TEX. R. EVID. 702. Assumptions on which a hypothetical is based need not be limited to those supported by the evidence; counsel may propound questions that assume facts in accordance with the theory of the case. *Held v. State*, 948 S.W.2d 45, 53 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd).

Here, the evidence showed that Taylor found appellant lying in the street next to his motorcycle shortly after 2:00 a.m. Appellant's blood sample was drawn later that same morning at 7:45 a.m. An analysis of appellant's blood revealed that appellant had blood alcohol content of 0.19 grams of alcohol per 100 milliliters at that time. The time of appellant's last drink was not known.

During its direct examination of Prince, the State asked the following hypothetical question:

> [I]f a person took their last drink, hypothetically speaking, at 12:00 noon then 5 1/2 hours later at 5:30 in the evening their blood alcohol level—their blood was taken and determined to be 0.19, can you say using the methods you've described what their blood alcohol level would have been at noon when they stopped drinking or an hour after they stopped drinking, after they reached their maximum?

Appellant objected to the question on relevancy grounds because the time of appellant's last drink was not known.[4] A hearing was held outside the presence of the jury. At the conclusion of the hearing, the trial court denied appellant's objection. The trial court noted that, from the testimony of the State's witnesses, the time of appellant's last drink was known to be before 2:00 a.m.

When the jury returned, the following exchanged occurred between the State and Prince:

> Q.    I'm saying, hypothetically, if a person stops drinking at 12:00 noon and then 5 1/2 hours later at 5:30 their blood alcohol level is .19 grams of alcohol per 100 milliliters of blood.
>
> A.    Okay.
>
> Q.    Okay. So how much alcohol would have been eliminated in those intervening 5 1/2 hours?
>
> A.    It would be a range of approximately .07 to .09.

On re-direct, the State clarified that, in the hypothetical, the person's blood alcohol level would have been between 0.26 and 0.28 five-and-one-half hours earlier.

Assuming, without deciding, that the admission of Prince's testimony regarding the hypothetical was an abuse of discretion, we conclude that such error was harmless error. The erroneous admission of retrograde extrapolation

---

[4] In the trial court, appellant did not argue that other factors identified in *Mata* specific to appellant were not considered.

25

testimony is non-constitutional error subject to a harm analysis. *Bagheri v. State*, 119 S.W.3d 755, 762–63 (Tex. Crim. App. 2003); *see also Douthitt v. State*, 127 S.W.3d 327, 337 (Tex. App.—Austin 2004, no pet.).

We must disregard the trial court's error in admitting Prince's retrograde extrapolation testimony unless it affected appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). An appellate court may not reverse a judgment for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). We must consider the entire record, including testimony, evidence, voir dire, closing arguments, and jury instructions to determine whether the jury was affected. *Bagheri*, 119 S.W.3d at 763. We should also consider the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert. *Id.*

Here, retrograde extrapolation evidence was not mentioned or alluded to in voir dire. In its voir dire, the State discussed the different ways in which intoxication may be proven, including a showing of a blood alcohol content of 0.08 or greater. The State also discussed impairment with the jury, asking the venire

members what types of behavior and physical signs indicate a person is intoxicated.

In its opening statement, the State told the jury, "And you will hear from the forensic scientist, Robert Prince, about the results that I told you about, that the results of the blood alcohol content were .19 which, as you know, is more than two times over the limit." However, the State makes no mention of retrograde extrapolation in its opening statement.

Significantly, in his opening statement, appellant expressly stated that he did not deny that he was intoxicated. To the contrary, he posited to the jury that the evidence would show that he became intoxicated after he was run off the road by the SUV. He told the jury that the evidence would show that, after being run off the road, he walked to a nearby store and bought a 40 ounce can of malt liquor. Appellant stated that he then drank the liquor in the next 40 minutes and, by the time of his encounter with the police, he was intoxicated. During trial, however, appellant did not offer evidence to establish this defense.

The charge permitted the jury to find intoxication by impairment. As discussed, to show impairment, the State offered the testimony of the Paramedic Lester, Officer Yates, and Officer Rivas, who each testified regarding appellant's demeanor and physical condition. The State also offered the videotape in which appellant is heard to say that he has had too much to drink to drive.

27

With respect to showing intoxication based on blood alcohol concentration, the jury heard, without objection, that appellant's blood alcohol concentration was 0.19, approximately five-and-one-half hours after he was found by Marcus Taylor. Prince described for the jury, without objection, how the average person metabolizes alcohol. He testified that most people "reach their maximum concentration of alcohol . . . approximately one hour after their last drink. At that point then you will stop absorbing and then strictly start eliminating." He explained that the average elimination is 0.02 grams of alcohol per hour. The State asked, "[I]f a person reached their maximum—hypothetically speaking, reached their maximum concentration at .08, it would take the average person four hours to eliminate that alcohol?" Prince responded, "Approximately, correct." Thus, the jury also had this hypothetical information from which to extrapolate past blood alcohol content.

It is also noteworthy that, on cross-examination, appellant elicited testimony from Prince making it clear that his testimony was describing a hypothetical situation. He acknowledged that he had not prepared a retrograde analysis extrapolation with regard to this particular case. Prince responded affirmatively when asked whether his hypothetical analysis was "off the cuff" and had not been prepared before he was presented with the hypothetical fact scenario. Prince also responded affirmatively when asked, "You didn't go to the lab and do any sort of

analysis to come up with this opinion. . . .  [Y]ou're just kind of taking a hypothetical and doing the best you can."

With respect to closing argument, the State discussed the evidence showing intoxication by impairment.  It also discussed the evidence showing intoxication by blood alcohol content, including the hypothetical conclusions reached by Prince.  Thus, evidence supporting a showing of intoxication under both theories was emphasized.

What is significant in this case, however, is that appellant's primary defense was not lack of intoxication.  Rather, his defense was that he was not intoxicated *while* he was operating his motorcycle.  The hypotheticals posed to Prince had little effect on the presentation of this defense.

On direct examination, the State did ask Prince if a person who consumed only 40 ounces of beer could have a blood alcohol content of 0.19 five-and-one-half hours later.  Over the defense's objection, Prince responded in the negative.  However, when asked whether he knew the alcohol content of malt liquor, rather than beer, Prince said he did not.

On cross-examination, Prince acknowledged that, if the alcohol consumed had a higher percentage of alcohol than beer, the outcome of his analysis would be affected.  In addition, if the person had something else to drink before the beer, that would also affect his analysis.  Lastly, he acknowledged that changing the timeline

for when the alcohol had been consumed would also change the outcome. Thus, given the totality of Prince's testimony on direct and cross-examination, the hypotheticals heard by the jury likely had little, if any, bearing on appellant's defense in this case.

In summary, the retrograde extrapolation testimony in this cause was elicited from an expert, but there is no indication that the jurors were predisposed to give such testimony greater weight than the other evidence before them. The retrograde extrapolation testimony was cumulative of other evidence of intoxication. Although the prosecutor did remind the jurors of Prince's testimony during its closing arguments, it did not claim that his testimony was alone sufficient to convict. Given the strength of the State's case and the relative weakness of appellant's defensive theory—including his failure to develop the evidence that he claimed in his opening statement he would show—we can state with fair assurance that the erroneous admission of the retrograde extrapolation testimony had, at most, a slight effect on the jury. *See* TEX. R. APP. P. 44.2(b); *see also Douthitt*, 127 S.W.3d at 339.

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish.   TEX. R. APP. P. 47.2(b).