# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-12-00687-CR

**David Malcolm Ransom, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
NO. 69,677, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant David Malcolm Ransom of arson, including a deadly weapon finding, and sentenced him to fifteen years' imprisonment. On appeal, he argues that the evidence is insufficient to support his conviction, that the trial court erred in its restitution order, and that the jury charge was erroneous. We affirm the trial court's judgment of conviction.

### Factual Summary

Miriam Gonzalez testified that Ransom was her ex-boyfriend and she and her son lived in a house that she rented from one of her brothers. On the day of the fire, Gonzalez and Ransom had an argument, and Gonzalez told Ransom she wanted to end the relationship, but Ransom told her they should try to work things out. Gonzalez drove her son to his father's house, and when she returned, she and Ransom spent the evening with her family. At about 11:30 p.m., she

and Ransom returned to her house, where they started arguing. Gonzalez asked Ransom to leave, but he followed her into her bedroom and locked the door behind him, blocking her from leaving. Ransom grabbed Gonzalez's arms, pulled her hair, said he hated her, and told her he would "destroy [her] house." Ransom took out his lighter and told her "he was going to burn the house down, light the house on fire." Ransom lit some clothes on fire, then turned to open the door and throw something out of the room. When he turned away, Gonzalez climbed out her bedroom window and ran. Ransom chased her down, grabbed her by the hair, and pulled her to the ground. She started to scream, and he let go, saying "he was going to burn the house down." Gonzalez ran to her brother's house, taking a circuitous route in hopes that Ransom would not follow her, and returned when a neighbor told her that her house was on fire and that her family thought she was inside. Gonzalez initially feared that Ransom was still inside, and firefighters looked for him until he walked up some time later. The fire destroyed the home and everything inside.

Deputy Sheriff Michael Pinkert testified that when he arrived at the scene, the fire department was trying to put out the fire and Gonzalez was crying and very upset. Pinkert spoke only briefly to Gonzalez and did not notice injuries to her face, body, or arms. About forty minutes later, Ransom walked up. Asked what had happened, Ransom said he and Gonzalez "had gotten into a discussion" while walking around the neighborhood and walked their separate ways. Ransom was not belligerent or hostile and he did not make any statements related to having set the fire.

When Fire Marshal Steve Casey arrived at the house about an hour after the fire was reported, the fire department was still trying to extinguish the flames. Gonzalez, whose pants Casey noticed were "torn and tattered," was initially upset because she believed that Ransom was in the

2

house, but Ransom appeared at the scene about fifteen minutes after Casey arrived. When Casey asked Ransom if he was okay, Ransom got "agitated," acted very upset, clenched his fists and jaw, and swore. Ransom told Casey that he thought a candle in the house had started the fire.

Casey interviewed Gonzalez the next day, and she described the assault and said that Ransom had ignited some clothing that had been lying on her bed. Although Casey did not do a full investigation due to his involvement in another fire, he determined that the fire had started in the bedroom and also had a "hot burning area" in the living room. Casey decided to allow the insurance company's arson inspector to do a more complete investigation of the cause of the fire. The insurance company's arson investigator testified that the fire was concentrated in the bedroom at the front of the house and in the living room, that the fire was not accidental or caused by an electrical or mechanical issue, and that it was intentionally set. A sample was taken in response to an alert by a dog trained by the state fire marshal's office, but tests on the sample were negative for ignitable liquids. Several experts testified that it is not uncommon to find no ignitable liquid residue because the liquids can evaporate, burn up in the fire, or be washed away by fire-fighting efforts.

Police Chief Eric Edwards also interviewed Gonzalez the day after the fire, and she said that she and Ransom had fought and that Ransom grabbed her by her wrists and hair, flicked a lighter "trying to get it to light," and held the lighter to clothing on her bed. Gonzalez got out of the house, and Ransom tackled her, grabbed her hair, and pulled her down the street. Edwards saw bruises on her hip, both knees, right arm and wrist, and face, photographs of which were provided to the jury, and said the waistband of her pants was stretched as if someone had tried to forcibly pull them off, both knees had grass stains, and the back of her sweatshirt had a burn mark.

3

## Sufficiency of the Evidence

The indictment charged Ransom with causing a fire in a habitation "by igniting clothing or by igniting an unknown object inside said habitation" and alleged that he used a lighter as a deadly weapon. Ransom contends that the evidence is insufficient to show that (1) he started the fire, (2) that he ignited clothing or other items, or (3) that he intended to damage or destroy the house. *See* Tex. Penal Code § 28.02(a)(2) (person commits arson if he starts fire with intent to destroy or damage habitation). In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010). The jury is the sole judge of witness credibility and the weight to be given to the testimony. *See id.* at 902.

Ransom acknowledges that Gonzalez testified that he said he was going to burn down the house and that she saw him flick the lighter and light clothing on fire and that fire investigators testified that the fire was intentionally set and was concentrated in the bedroom and living room. Despite that testimony, however, he argues that the evidence does not establish that he had an intent to damage or destroy the house, that he actually started the fire, or that he started the fire with the clothing. Ransom argues that his statements to Gonzalez "may have been nothing more than threats to get her to stay" and that Gonzalez did not "testify whether the clothing actually *caught fire*" or say exactly what it was Ransom had thrown out of the bedroom.[1] He also asserts that

_____

[1] Ransom argues that it is clear that the jury struggled with this issue because the jury sent out a note asking whether Gonzalez had testified that "there was ignition to the clothing on the bed

4

there is no evidence as to exactly what started the fire because there were no positive tests for liquid ignitables and because, he alleges, there was evidence that a candle or the water heater might have started the fire. However, the fire marshal and arson investigator both denied that the fire might have started at the water heater, the only evidence about a candle was Ransom's statement to that effect the night of the fire, and there was explanatory testimony about why residue might not be found after a fire.

The vast and overwhelming weight of the evidence supports the jury's finding that Ransom started the fire intentionally—he stated as much to Gonzalez while flicking a lighter; she saw him light clothing on fire; she escaped from Ransom after a skirmish, returning a short while later to find the house fully engulfed in flame, with the fire concentrated in her bedroom; she had bruises on her body and face, torn and dirtied pants, and a burn mark on her sweatshirt; and investigators determined that the fire had been intentionally started in the bedroom, with an additional hot spot in the living room. We overrule Ransom's first issue on appeal.

**Restitution Award**

Ransom next contends that the trial court erred in awarding $55,000 in restitution, arguing that there was insufficient evidence to support the award.

---

when he was flickering the lighter." The trial court instructed the jury that, if it was in disagreement about a witness's exact testimony, it was to specify what was in dispute so that the court reporter could transcribe that portion of the testimony. The jury did not seek further clarification. Further, Gonzalez's testimony was that Ransom "starts lighting little articles of clothes on the bed" and that she saw him "light things on fire."

A trial court may order a criminal defendant to pay restitution for losses resulting from the convicted offense. Tex. Code Crim. Proc. art. 42.037; *Maloy v. State*, 990 S.W.2d 442, 444 (Tex. App.—Waco 1999, no pet.). A restitution order will be reviewed for an abuse of discretion, but the amount of restitution ordered must be just and supported by evidence. *Maloy*, 990 S.W.2d at 444; *Davis v. State*, 757 S.W.2d 386, 389 (Tex. App.—Dallas 1988, no pet.).

Gonzalez's house was completely gutted, and all of her and her son's belongings that were in the house were lost. Gonzalez's brother, the owner of the house, testified that his insurance company "wrote a check for 55," and the trial court ordered Ransom to pay the insurance company $55,000. We hold that sufficient evidence supports the trial court's restitution order such that the order was not an abuse of discretion. *See Davis*, 757 S.W.2d at 389 (victim's mother's testimony of victim's funeral expenses was sufficient to support restitution award of same amount). We overrule Ransom's second issue.

**Error Related to Punishment Range**

Finally, Ransom argues that the court incorrectly instructed the jury on the range of punishment for the crime. Arson is a second-degree felony unless the building is a habitation, in which case it is a first-degree felony. *See* Tex. Penal Code § 28.02. When the parties and trial court began the trial, they operated under the belief that the offense was a second-degree felony, *see id.* § 12.33 (second-degree felony carries punishment range of two to twenty years), including asking and during voir dire whether the panelists could consider the second-degree range. Not until the punishment charge conference, after the jury had returned its guilty verdict and the punishment

6

evidence had been presented, did the error come to light. The trial court proposed a jury charge authorizing the first-degree felony range, and Ransom objected and moved for a mistrial, accusing the State of misleading the jury during voir dire and noting that some panelists had been struck for saying they could not consider the full second-degree range.[2] The trial court denied Ransom's motion for mistrial. Ransom also objected to the charge and asked the court to include the second-degree range, but the trial court refused. In closing arguments on punishment, Ransom accused the State of misleading the jury. The State responded in its closing arguments that both sides had made an honest mistake and said, "It's not a 99 or life kind of case. It's honestly not. Twenty years [is] an appropriate sentence in this case." The jury returned a sentence of fifteen years' imprisonment.

Ransom urges that the error should be considered constitutional but that even if we determine it to be non-constitutional, we should hold the error to have been harmful and reverse his conviction. We will assume without deciding that the error is constitutional, and, as instructed by the court of criminal appeals, will consider the nature of the error, whether it was emphasized by the State, its probable implications, and the weight a juror would probably have placed on it. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). Those considerations are not the exclusive factors to consider, and not every factor will apply to every error. *Id.*

The error, a misstatement of the punishment range made during voir dire, seems to have been made by all parties, and when it was noted, the State admitted the error and urged the jury

---

[2] The State observes that of the three jurors struck for cause, none of them truly stated they could not consider the full range for a second-degree felony. All three of them basically said they could not judge someone else's guilt or innocence and, in addition, two of them indicated that they did not think they could assess a twenty-year sentence.

7

not to consider the maximum first-degree punishment. The record does not give rise to a concern that any of the jurors would have placed noticeable weight on the error or that the error had any influence on the jurors' deliberation or decision making.[3] As we summarized earlier, the evidence of Ransom's guilt was significant. Finally, the sentence imposed by the jury fell within the range for a second-degree felony. *See* Tex. Penal Code § 12.33 (second-degree felony punishable by sentence of two to twenty years); *see also id*. § 12.32 (first-degree felony punishable by sentence of five to ninety-nine years or life imprisonment). *Cf. Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (in entering guilty plea for third-degree felony, defendant was given admonishment that included possibility of life sentence; court held that because sentence assessed fell within misstated and actual ranges, admonishments substantially complied with code of criminal procedure). Having reviewed the entire record, we conclude beyond a reasonable doubt that the error did not contribute to Ransom's conviction or punishment. *See Snowden*, 353 S.W.3d at 818. We overrule Ransom's third issue on appeal.

## Conclusion

Having overruled Ransom's issues on appeal, we affirm the judgment of conviction.

---

[3] Ransom argues that "[b]ecause the jury understood this was a less serious offense than it really was, in terms of punishment and level of offense, they may have returned a jury verdict they would not otherwise have returned had [they] been properly instructed." However, there is no indication in the record that the jury might have acquitted Ransom of first-degree arson while it was content to convict him of second-degree arson.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:   August 28 2014

Do Not Publish

9