ACCEPTED
06-14-00097-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
4/22/2015 10:30:13 AM
DEBBIE AUTREY
CLERK

# IN THE COURT OF APPEALS FOR THE
## SIXTH DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

4/22/2015 10:30:13 AM

DEBBIE AUTREY
Clerk

**WILLIE FRANK JACKSON**
APPELLANT

§
§
§
§
§
§
§
§

v.

**No. 06-14-00097-CR**

**THE STATE OF TEXAS,**
APPELLEE

---

## STATE'S BRIEF

---

### ON APPEAL FROM THE 354th DISTRICT COURT
### HUNT COUNTY, TEXAS

TRIAL COURT CAUSE NUMBER 29,295
THE HONORABLE RICHARD A. BEACOM, JUDGE PRESIDING

**NOBLE D. WALKER, JR.**
Hunt County District Attorney
P.O. Box 441
Greenville, Texas 75403-0441
(903) 408-4180 - Telephone
(903) 408-4296 – Facsimile
nwalker@huntcounty.net - email
State Bar Number - 20717620

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................................i

INDEX OF AUTHORITIES ................................................................................ii

SUMMARY OF THE STATE'S ARGUMENTS.................................................2

STATE'S RESPONSE TO POINTS OF ERROR ONE...............................3–6
 Each required element was proven beyond a reasonable doubt;
 therefore, the evidence is legally sufficient to prove that Appellant
 is guilty of Possession of Cocaine as charged in the indictment.

STATE'S RESPONSE TO POINTS OF ERROR TWO........................6-11
 The Trial Court did not commit error by allowing the Appellant to
 be restrained during trial.

PRAYER.............................................................................................................11

CERTIFICATE OF SERVICE.........................................................................12

CERTIFICATE OF COMPLIANCE TYPEFACE/WORDCOUNT...........12

# INDEX OF AUTHORITIES

*Jackson v. Virginia*, 433 US 307, 99 S.Ct. 2781 (1979). ............................................ 3

*Dewberry v. State*, 4 S.W.3d 735 (Tex. Crim. App. 1999)
*Cert. denied*, 529 U.S. 1131(2000). .......................................................... 3

*Long v. State,* 823 S.W.2d 259 (Tex.Crim.App 1991). ............................................ 9

*Snowden v. State* 353 S.W.3d 815 (Tex.Crim.App 2011)....................................... 10


Texas Statutes
TEXAS PENAL CODE, SECTION 29.01 (1).................................................................. 5

## IN THE COURT OF APPEALS FOR THE
## SIXTH DISTRICT OF TEXAS AT TEXARKANA

| | | |
|---|---|---|
| **WILLIE FRANK JACKSON** | § | |
| APPELLANT | § | |
| | § | |
| v. | § | **No. 06-14-00097-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| APPELLEE | § | |

---

## STATE'S BRIEF

---

TO THE HONORABLE COURT OF APPEALS:

NOW COMES the STATE OF TEXAS, Appellee, in this appeal from Cause No. 29,295 in the 354th Judicial District Court in and for Hunt County, Texas, Honorable Judge Richard A. Beacom, Presiding, now before the Sixth District Court of Appeals, and respectfully submits this its brief to the Sixth District Court of Appeals in support of the judgment of conviction and sentence in the court below.

# SUMMARY OF THE STATE'S ARGUMENTS

Each required element was proven beyond a reasonable doubt; therefore, the evidence is legally sufficient to prove that Appellant is guilty of Aggravated Robbery as charged in the indictment.

The record does not reflect that the Jury observed Appellant's "shock belt restraint". Additionally, assuming arguendo that the Jury did observe the "shock belt", Appellant did not object to such. And finally, based upon a totality of the record, if the Trial Court committed error, it was harmless.

The jury was rationally justified in making their decision at both guilt/innocence and punishment and it should not be overturned. As there was no prejudicial error in this case, Appellant's Points of Error should be denied and his conviction affirmed.

## STATE'S RESPONSE TO POINTS OF ERROR ONE

**Each required element was proven beyond a reasonable doubt; therefore, the evidence is legally sufficient to prove that Appellant is guilty of Aggravated Robbery as charged in the indictment.**

### Argument and Authorities

The proper standard of review to determine legal sufficiency is whether considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Jackson v. Virginia*, 433 U.S. 307, 319, 99 S.Ct. 2781 (1979). This standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* When performing a legal sufficiency review, the court may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and substituting its judgment for that of the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

In the present case, the State was required to prove beyond a reasonable doubt that: 1) on May 21, 2013, 2) in Hunt County, Texas, 3) the Appellant, 4) did then and there while in the course of committing theft and with intent to obtain or maintain control of property, 5) intentionally, knowingly, or recklessly cause

3

bodily injury to Steven Cook, 6) by shooting him in the leg or body, 7) and that a firearm was used in the commission of the offense.

In regards to date and location, those elements were not contested and the Victim, Steven Cook testified that the offense occurred on May 21, 2013 in Hunt County, Texas. (RR Vol. 10 p. 14-15). Furthermore the Defendant was identified in the courtroom by the Victim (RR Vol. 10 p. 18) and Officer Huddleston (RR Vol. 10 p. 144). Also, the Victim was 100% certain that he had identified the Appellant in a photo line-up. (RR Vol. 10 p. 136-138). In regards to proving that the Appellant committed theft with intent to obtain or maintain control of property, the Victim testified as follows: (RR Vol. 10 p. 23-24):

Q. Okay. And then what – what was the defendant's response? What did he do?

A. He said, Where's it at? And then I said, What, you know. And he goes, Where's your wallet? And I told him everything was in the console.

Q. What did he do after that?

A. He went back to the truck and got my wallet and stuff out of the console.

The Victim testified that he observed the Appellant rummaging through his truck. (RR Vol. 10 p. 24). He also testified that he asked Damien to go look in his truck to determine what's gone. (RR Vol. 10 p. 29). The Victim went on to testify that the next morning he returned to his truck to find that his keys, wallet, and

4

pistol were missing from his truck. (RR Vol. 10 p. 35). Although the Victim never recovered his pistol or keys, he did locate his wallet and found that $40.00 was missing. (RR Vol. 10 p. 35-37).

In regards to the Appellant causing the Victim bodily injury by shooting him with a firearm, while in the course of committing theft, the Victim testified as follows: (RR Vol. 10 p. 20 – 21):

> A.  Okay. I just, you know, opened the door, was like, What's up, What's going on? And he took his hand out of the oven mitt and had a pistol in his hand and he hit me between my eyes and it stunned me for a minute. And I said, What's going on, you know; and then he pointed the gun at my forehead and pulled the trigger and it clicked.
>
> And he said, That one's free, motherfucker. And he said, You better move. And I said, What do you mean? And then he shot me.

The Texas Penal Code, Section 29.01 (1) defines "In the course of committing theft" as conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft. Immediately after shooting Mr. Cook, the Appellant stood over him and asked where his wallet was located. (RR Vol. 10 p. 20-25). Based on testimony, the shooting of Mr. Cook clearly occurred during the commission or in immediate flight after the commission of theft.

The victim went on to testify that the Appellant had shot him in the leg. (RR Vol 10 p. 21-22). Furthermore, the Victim testified before the Jury and showed them his wounds from the gunshot. (RR Vol. 10 p. 31-33).

Later in the trial, Investigator Felicia White testified. (RR Vol. 10 p. 97-131). During the course of her investigation, Investigator White listened to certain recorded jail calls the Appellant had made. In one of those calls, the Appellant inadvertently admitting to the aggravated robbery of Mr. Cook. While speaking with an individual named Fran, the Appellant requested that she ask Terry to tell the white boy, "Things wouldn't have gone down that way if it wasn't for the water". (RR Vol 10 p. 115-116). Investigator White went on to explain that "water" is the street term for PCP. (RR Vol. 10 p. 116).

The jury heard sufficient evidence to find each of the required elements beyond a reasonable doubt and to find Appellant guilty of Aggravated Robbery with a Deadly Weapon as alleged in the indictment. Therefore, Appellant's Point of Error Number One should be denied and his conviction affirmed.

## STATE'S RESPONSE TO POINT OF ERROR TWO

**The Trial Court did not commit error by allowing the Appellant to be restrained during trial.**

### Argument and Authorities

Despite Appellant's argument, there is no indication in the record that either the Trial Court allowed Appellant to be fitted with a "shock belt" or that the Jury

6

saw Appellant wearing a "shock belt". During the punishment phase of the trial, the State was attempting to offer photographs of the Appellant's tattoos. Defense counsel objected on the grounds that the witness did not have personal knowledge that the photos accurately depicted the Appellant's tattoos. (RR Vol. 11 p. 35-36). Consequently, the State requested that the Appellant take off his shirt so that the Jury could see his tattoos. (RR Vol. 11 p. 36). The following is the only reference in the record as to the "shock belt":. (RR Vol. 11 p. 36-38)

Q.     (By Ms. Hudgeons) Then I would ask that the defendant remove his shirt and show the jury so that they can all properly authenticate it if he's going to refuse to take his shirt off to show the witness.

MS. FERGUSON: You want to take your shirt off –

MS. HUDGEONS: We can do that in private or in front of the jury.

THE COURT: All right.

MS. FERGUSON: So do you want to do it in front of the jury or do you want to do it in just a little bit?

DEFENDANT: I'll do it right here in front of the jury. It don't matter.

THE COURT: All right. If you'll step over here and raise your shirt and show them your tattoos.

MS. FERGUSON: Hold on, Your Honor, just a second. Can we approach? Just a second, Mr. Jackson.

*(Discussion at the Bench, on the record)*

MS. FERGUSON: They put a shock belt –

MS. HUDGEONS: If he's willing to take his shirt off, then let him take his shirt off.

MS. FERGUSON: No. No. No. No. No. What I'm saying is —

THE COURT: He's already taken his shirt off.

MS. FERGUSON: Huh?

THE COURT: His shirt's off.

MS. FERGUSON: Oh, nevermind. Nevermind.

*(Open court, defendant and jury present)*

THE COURT: All right. If you'd step over in front of the jury, sir.

MS. HUDGEONS: And since this is the witness that's testifying, if we could show the witness? That's really the only person I need to see them. That's far enough.

THE COURT: All right. Let the record reflect the defendant has removed his shirt and has marched in front of the jury so they could see any tattoos that he might have.

Q.     (By Ms. Hudgeons) Okay. Now that you've had the opportunity to view the defendant's tattoos, can you testify to State's Exhibits Nos. 21 through 25 fairly and accurately reflect those tattoos?

A.     Yes, ma'am, they do.

MS. HUDGEONS: I'll, again, offer State's Exhibits Nos. 21 through 25, which have been previously tendered to the defense.

*(State's Exhibit Nos. 21, 22, 23, 24, 25 offered)*

MS. FERGUSON: No objection to these, Your Honor.

THE COURT: All right. State's 21 through 25 are admitted.

From the record, there is no mention that the Jury ever saw a "shock belt". In fact, the only reference to a "shock belt" was made by Defense Counsel at the bench and there's no indication from the record as to the context of her comment or that her statement was heard by the Jury. Furthermore, not only was there no objection raised concerning the "shock belt", once Appellant had removed his shirt on his own accord, Defense Counsel ended the discussion at the bench and stated, "Oh, nevermind. Nevermind".

The State would argue that a "shock belt" isn't exactly the same as shackles, leg irons, or handcuffs. Historically, the use of those devices are arguably quite common within the understanding of most individuals. To the contrary, a "shock belt" could easily be unidentifiable to a person who is not familiar with the device. In this case, there is no indication in the record that the Jury observed Appellant's "shock belt". Assuming arguendo that a "shock belt" is analogous to handcuffs or shackles, case law provides, "Where there is no evidence the jury saw a defendant's restraints, the error will be held harmless." *Long vs. State*, 823 S.W.2d 259 (Tex.Crim.App. 1991).

Assuming that the Jury did see the "shock belt", it is the State's position that any error that may have resulted is harmless. In determining any resulting harm, Court's should consider (a) the nature of the error, (b) the extent emphasized by the State, (c) the probable collateral implications, and (d) the weight the jury may have

9

given the error in their deliberations. *Snowden vs. State*, 353 S.W.3d 815,821-22 (Tex.Crim.App. 2011). Here, it is difficult to assess the nature of the error because the record does not provide any reference to the Jury having seen the "shock belt" nor was an objection lodged to bring the matter to the Jury and/or the Court's attention. However, a clear reading of the record shows that any resulting error wasn't deliberate. The Appellant removed his shirt voluntarily while a bench conference on the matter was presumably about to occur. In fact, the Appellant stated that he would remove his shirt right in front of the Jury; that it didn't matter. (RR Vol. 11 p 36). In regards to the second prong of *Snowden*, the entirety of the record does not provide a single entry where the State emphasized the matter, at all. And finally, considering the last two (2) prongs of *Snowden*, there was ample evidence offered during the punishment phase to support Appellant's sentence. In fact, he was considered a habitual criminal with his punishment range enhanced to 25 to 99 years or life. In light of the nature of the offense and the Appellant's priors, the Jury had ample evidence to support their sentence and there's no evidence that the "shock belt" contributed to the prison sentence rendered by the Jury. The sentence Appellant received was appropriate for the crime he was convicted of and justified by the evidence presented during the sentencing hearing.

The record does not support that the Jury saw the Appellant's "shock belt" nor was there an objection to bring the matter to the attention of the Trial Court

and to preserve error. In the event the Jury did see the "shock belt" and/or it's determined to be error, it is the State's position that any resulting error is harmless since the jury heard sufficient evidence during the punishment phase to warrant the Appellant's sentence.

## PRAYER

Appellant's trial was without prejudicial or fundamental error. The State prays that Appellant's conviction and sentence be affirmed.

Respectfully submitted,

**NOBLE D. WALKER, JR.**
Hunt County District Attorney
P.O. Box 441
Greenville, Texas 75403-0441
(903) 408-4180 - Telephone
(903) 408-4296 – Facsimile
nwalker@huntcounty.net – email
State Bar Number - 20717620

11

## CERTIFICATE OF SERVICE

A true copy of the State's brief has been placed in the box of Jason Duff, Appellant's attorney, in the Hunt County District Clerk's office, today April 22, 2015, pursuant to local rules.

_____
NOBLE D. WALKER, JR.
Hunt County District Attorney

## CERTIFICATE OF COMPLIANCE OF TYPEFACE AND WORD COUNT

In accordance with Texas Rules of Appellate Procedure 9.4 (e) and (i), the undersigned attorney of record certifies that Appellees Brief contains 14-point typeface of the body of the brief, 12-point typeface for footnotes in the brief and contains 2,583 words, excluding those words identified as not being counted in appellate rule of procedure 9.4(i)(1), and was prepared on Microsoft Word 2007.

_____
Noble D. Walker, Jr.
Attorney for the Appellee

2