

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00516-CR

Kedreen Marque **PUGH**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR6053
Honorable Stephanie R. Boyd, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed: April 15, 2020

REVERSED AND REMANDED

Kedreen Marque Pugh was convicted by a jury of possession of a controlled substance with intent to deliver. On appeal, Pugh challenges the trial court's denial of his motion to suppress and the admission of a firearm into evidence. Because we hold the trial court erred in denying the motion to suppress Pugh's statement, we sustain Pugh's first issue, reverse the trial court's judgment, and remand the cause to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

Pugh was arrested by a task force on an outstanding murder warrant while driving his wife's vehicle. After he was arrested and handcuffed, Pugh was placed in the back of a marked patrol vehicle to be transported to police headquarters by uniformed officers Johnny Lopez and Troy Thompson. The transporting officers were in contact with officers at the scene of the arrest as Pugh provided information necessary for his wife to pick up her car. Detective Joe Rios, who led the stop and arrest, drove the car from the highway access road to a gas station, but did not undertake any search of the car. Instead, he intended to allow Pugh's wife to pick up the car.

A few minutes after Pugh was driven from the scene of the arrest, the following exchange occurred:

> Pugh:          Officer?
> Officer Lopez: Yes, sir.
> Pugh:          I'm going to be honest, sir; I got stuff in the car, man.
> Officer Lopez: What do you got in the car?
> Pugh:          I got drugs in the car, and I got a small handgun.

Officer Lopez radioed Detective Rios and informed him of Pugh's statements. Prior to this exchange, Pugh had not been read his *Miranda* warnings. Based on Pugh's statements, Detective Rios searched the car and found the drugs and handgun.

Pugh filed a motion to suppress claiming his statement regarding the drugs and handgun being in the car was the result of custodial interrogation, and he had not been read his *Miranda* warnings prior to making the statement. After a hearing, the trial court denied the motion.

## STANDARD OF REVIEW

"We review a trial court's ruling on a motion to suppress under a bifurcated standard of review; fact findings are reviewed for an abuse of discretion, and applications of law are reviewed de novo." *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019). In this case, the factual circumstances under which Pugh made his statement are undisputed. The only evidence presented

at the hearing on the motion to suppress was the video recording of the exchange between Pugh and Officer Lopez. No testimony was presented, and it was undisputed that Pugh was not read his *Miranda* warnings before Officer Lopez asked him "What do you got in the car?" Accordingly, "we are presented only with a legal issue." *Id*.

## DISCUSSION

"The *Miranda* rule generally prohibits the admission into evidence of statements made in response to custodial interrogation when the suspect has not been advised of certain warnings (including that the suspect has the right to remain silent and the right to counsel)." *State v. Cruz*, 461 S.W.3d 531, 536 (Tex. Crim. App. 2015). "Failure to administer *Miranda* warnings creates a presumption of compulsion." *Oregon v. Elstad*, 470 U.S. 298, 306 (1985). "Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*." *Id*. at 307. "A *Miranda* violation does not constitute *coercion* but rather affords a bright-line, legal presumption of coercion, requiring suppression of all unwarned statements." *Id*. at 306 n.1 (emphasis in original). "Thus, in the individual case, *Miranda*'s preventive medicine provides a remedy even to the defendant who has suffered no identifiable constitutional harm." *Id*. at 307.

"This is not to say, however, that all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 299 (1980). "In the *Miranda* context, 'interrogation' means 'any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Cruz*, 461 S.W.3d 536 (quoting *Innis*, 446 U.S. at 300-01). Thus, interrogation includes both "express questioning [and] its functional equivalents." *See Innis*, 446 U.S. at 300-01.

"A determination of whether or not an interrogation occurred focuses on the perceptions of the suspect, not the intent of police." *Xu v. State*, 191 S.W.3d 210, 215 (Tex. App.—San Antonio 2005, no pet.) (citing *Innis*, 446 U.S. at 301). "However, the police cannot be held responsible for the unforeseen results of their actions and words." *Id*. (citing *Innis*, 446 U.S. at 301-02). "Thus, interrogation can only extend to words and actions of police officers that they 'should have known' would likely elicit an incriminating response." *Id*.

In this case, Pugh told the officer he "was going to be honest with" him and that he had "stuff in the car." Based on this statement, Officer Lopez should have known Pugh was going to make some type of incriminating statement, since he "was going to be honest with him" about the "stuff" he had in the car. As a result, Officer Lopez should have known asking Pugh what he had in the car would likely elicit an incriminating response. Therefore, because Pugh's statement was the result of custodial interrogation, the trial court erred in denying the motion to suppress the statement.[1]

"Because the alleged error is constitutional in magnitude, we conduct our assessment of harm using the standard set forth in Rule 44.2(a) of the Rules of Appellate Procedure." *Lopez v. State*, 582 S.W.3d 377, 389 (Tex. App.—San Antonio 2018, pet. ref'd). Rule 44.2(a) provides that an appellate court "must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). In conducting a harm analysis of an error involving a constitutional protection, "the question for the reviewing court is not whether the jury verdict was

---

[1] In its brief, the only case cited by the State in analyzing Pugh's statement was *England v. State*, No. 12-01-00057-CR, 2002 WL 220861 (Tex. App.—Tyler Feb. 13, 2002, no pet.) (not designated for publication). In *England*, however, the appellant invoked his right to an attorney. 2002 WL 220861, at *1. The issue presented on appeal was whether the State established the appellant waived the right to counsel he previously invoked by initiating further conversation with the police. *Id*. Accordingly, the issue presented in *England* is readily distinguishable from the issue presented in the instant case.

supported by the evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007); *see also Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (noting considerations in deciding whether constitutional error resulted in harm include "the nature of the error (*e.g.*, erroneous admission or exclusion of evidence, objectionable jury argument, *etc.*), whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to it in the course of its deliberations").

In this case, Pugh's statement to Officer Lopez that he had drugs and a handgun in his wife's car led to the search of the car. Other than the expert's testimony identifying the drug recovered as heroin, the only witnesses to testify were Detective Rios and Officer Lopez, and both witnesses testified regarding the statement. Finally, during closing argument, the State repeatedly referred to the statement as evidence establishing Pugh's possession of the heroin. Accordingly, we hold the erroneous admission of Pugh's statement likely was a contributing factor in the jury's deliberations in arriving at a guilty verdict and, therefore, resulted in harm.

### CONCLUSION

The trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH