**Affirmed and Majority and Concurring Opinions filed May 21, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00699-CR

---

**TRISTAN KEIR EDWARDS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 85794-CR**

---

### CONCURRING OPINION

I disagree with the majority opinion because the trial court abused its discretion when it admitted Exhibit 63, the crime-scene photograph appellant challenges in his last issue. Although the error would not result in a reversal of the judgment, the prejudicial nature of the photograph far outweighed its probative value and admission of the photograph was unnecessary, as it was cumulative of other evidence.

Additionally, although not required to do so by statute, the trial court did not

conduct a timely competency hearing.

> ### *Exhibit 63*

In reviewing whether the crime-scene photograph was properly admitted, we determine whether the probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. The term "unfair prejudice" is the "tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). This determination requires a balancing test of the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1990).

Here, the admitted crime-scene photograph was particularly disturbing, gruesome, and revolting, and it undoubtedly spurred a strong emotional response from the jurors. As noted by the majority, the photograph depicts the three-week old infant laying on the kitchen floor, with brain matter on the floor next to the infant's body. Exhibit 63 was not necessary, as the majority asserts, to "assist the jury in understanding the medical examiner and crime scene investigator's testimony." The photograph was not material evidence necessary for the State to prove its case because the photograph was duplicative of other evidence in the case—the testimony of the medical examiner, the investigating officers, and the witnesses, who all gave a detailed synopsis of the nature of the injuries to the infant; the photographs admitted as Exhibits 2-6, which explicitly show the injuries to the infant; and the indictment read to the jury, which detailed the injuries to the infant, alleging appellant had murdered his own child by slamming the infant to the ground, against hard surfaces, and by stomping on him.

2

The trial court admitted body cam video of the scene the officers encountered and crime-scene photographs that depicted the complainant laying on the floor with injuries similar to those in Exhibit 63. The medical examiner testified in detail about the injuries depicted in the photographs:

[State]: Going down to the Evidence of Injury, the first thing that you note is the blunt head trauma. Can you describe to the jury how -- what you saw in this injury?

[Dr. Erin Barnhart[1]]: Yes. So, in this case there was a deformity of the skull meaning that the head was very obviously misshapen. There were some abrasions on the forehead area. There was a large laceration that extended from the right ear to the back of the head and the scalp was undermined in that location meaning basically that the scalp had been separated from the skull. The calvarium is the scalp cap or the top of the head, the round portion. That portion of the skull was in pieces. And then the base of the skull which is where the brain sits -- it would be essentially above your face here -- was also fragmented or in pieces as well. A portion of the brain had come out of the skull. Because the skull was in pieces and because of the large scalp laceration, the cranial cavity was essentially open. Part of the brain was recovered at the scene and was given to us by law enforcement. So that came separate from the body. And the right globe or right eye because of the fragmentation of the base of the skull had actually been displaced backwards into the cranial cavity.

However, because evidence of appellant's guilt is overwhelming, this error is harmless and must be disregarded. *See Snowden v. State*, 353 S.W.3d 815, 818 (Tex.

---

[1] Dr. Barnhart is the chief medical examiner for Galveston County.

Crim. App. 2011) (observing that the erroneous admission of evidence is reviewed for harm under the standard for non-constitutional error); *see, e.g.*, *Nguyen v. State*, No. 14-23-00126-CR, __ S.W.3d __, __, 2024 WL 629109, at *5 (Tex. App.— Houston [14th Dist.] Feb. 15, 2024, no pet. h.) (concluding that error in admission of evidence was harmless because there was overwhelming evidence in support of the verdict). For these reasons, I respectfully concur in the judgment, but disagree with the analysis and conclusion in regard to Exhibit 63.

### *The trial court refused to conduct a timely informal competency hearing*

As the majority opinion recites, on the fourth day of trial testimony, counsel for appellant filed a motion for a court ordered independent examination by a forensic psychiatrist after a meeting between appellant and the defense's expert psychiatric witness, who opined that appellant was incompetent to continue with trial. Defense counsel requested an immediate examination, which the trial court denied.

When raised after trial on the merits begins, Article 46B.005(d) of the Code of Criminal Procedure allows the trial court to determine the issue of competency at any time before sentence is pronounced, and, as here, to consider the defendant's mental state after the return of a verdict, unless the verdict is not guilty.

Because important constitutional rights are at issue, including the right to a fair trial, *see* U.S. Const. Amends. VI, XIV; Tex. Const. Art. 1, § 10, the trial court should have considered appellant's competency when requested by the defense. *See Pate v. Robinson*, 383 U.S. 375, 384–86 (1966). The issue of competency is crucial to the appellant's ability to consult with his counsel at trial. *See Turner v. State*, 570 S.W.3d 250, 264 (Tex. Crim. App. 2018). The failure to do so calls into question the verdict, as the person charged may have lost the important right and opportunity to provide information to his counsel, suggest effective cross-examination, and

4

participate fully in his defense. *See Turner v. State*, 422 S.W.3d 676, 689–91 (Tex. Crim. App. 2013). Because the trial court has the discretion, by statute, to determine competency at any time before sentence is pronounced, the reviewing court is precluded from considering the trial court's decision as "arbitrary or unreasonable." *See* Tex. Code Crim. Proc. Ann. art. 46B.005(d); *Hobbs v. State*, 359 S.W.3d 919, 924 (Tex. App.—Houston [14th Dist.] 2012, no pet.). While I acknowledge that the trial court performed its duty as required under the relevant statute, I nevertheless believe that this is a violation of a criminal defendant's Due Process rights, as it prevents the defendant from assisting in his defense by avoiding a determination of competency until after a trial has been concluded and guilt has been determined. The Texas Legislature should review and amend art. 46B.005(d) of the Code of Criminal Procedure to remedy the violation of Due Process rights permitted by this provision.

For these reasons, I concur in the judgment, but disagree with the analysis and conclusion in regard to whether the trial court erred in the admission of Exhibit 63, and despite article 46B.005, disagree with the timing of the competency hearing. I nevertheless agree with the majority's conclusion that the judgment must be affirmed.

/s/     Margaret "Meg" Poissant
Justice

Panel consists of Justices Wise, Zimmerer, and Poissant. (Zimmerer, J., majority). Publish — TEX. R. APP. P. 47.2(b).

5