**AFFIRMED; Opinion Filed December 15, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-01061-CR

## No. 05-11-01062-CR

**ARMANDO FERMIN SOTO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause Nos. F10-19502-H & F10-19053-H**

# MEMORANDUM OPINION

Before Justices Francis, Stoddart, and Schenck
Opinion by Justice Stoddart

A jury convicted Armando Fermin Soto of two counts of intoxication manslaughter and sentenced him to twenty years' confinement in each case. In six issues, Soto argues the trial court violated his rights under the Confrontation Clause; the evidence is insufficient to support his conviction; the trial court improperly commented on the weight of the evidence; the trial court erred by admitting autopsy photographs; and his trial counsel provided ineffective assistance. We affirm the trial court's judgments.

FACTUAL BACKGROUND

Isaac Lozano was driving on an interstate highway in Dallas County at approximately 4:45 a.m. on September 6, 2010. He was driving faster than the 60 mile per hour speed limit. A truck swerving from lane-to-lane passed him. He saw the truck collide with two cars: a Chrysler

300 and a Nissan Sentra. Lozano pulled over on the side of the highway and called 911. When the firefighters arrived, they removed the top of the Nissan and pried open the doors to remove people from the car. A woman and a baby, Tuong Le and Tri Khuu, died as a result of the collision.

Lozano heard the driver of the truck screaming in pain and a second person laughing near the truck. Claudia Rodriguez, the driver of the Chrysler, observed two people near the truck. One was laughing while the other was yelling words to the effect of "don't call the police." She testified that police arrested the man driving the truck who had a cut on his forehead. When asked whether she could identify the man, she said: "I'm not sure, but I think he looks like that man in black," referring to appellant.

The jury saw photographs of the vehicles taken at the scene of the collision. The Nissan was crumpled, and the front of the truck was badly damaged. The driver's side airbag in the truck was deployed and had blood on it. After obtaining a search warrant, the police collected the airbag and a forensic biologist compared the blood on the airbag to appellant's blood. She testified "the partial DNA profile obtained from the sample was from a single male, and matched the DNA profile of Armando Soto." She concluded appellant was a "possible source" of the DNA and there was a 1 in 15.9 billion chance that the DNA could be from someone other than appellant.

Deputy A. Broadnax of the Dallas County Sheriff's Department worked the accident scene. At trial, Broadnax identified appellant as the driver of the truck. He testified that he found appellant lying on the ground and his face "was scared [sic] up." Appellant's eyes were red as though he had been drinking. He appeared "out of it" and he "didn't know what happened." Broadnax saw appellant again after he was transported to the hospital and, based on how he looked and smelled and his demeanor, Broadnax believed appellant was intoxicated.

Appellant's blood was drawn at the hospital. His blood-alcohol level was 0.19 grams of ethanol for 100 milliliters of blood, indicating intoxication.

Data from the Airbag Control Module showed that five seconds before the airbag deployed, the truck was traveling at 94 miles per hour and 100 percent throttle, meaning the accelerator was pressed to the floor. One second before the airbag deployed, the truck was traveling at 95 miles per hour and the throttle was at 18 percent, meaning pressure was removed from the accelerator. However, the driver of the truck never braked.

Documents from the emergency room show that appellant told the medical staff he was rear-ended while driving 55 miles per hour and he "blacked out."

The jury heard a phone conversation between appellant and his mother, Yolunda Gonzales.[1] Appellant told his mother he probably fell asleep while driving with his foot on the accelerator. He could not remember whether his airbag deployed. He said: "Who knows if I didn't hit them I probably would have [killed myself]." Gonzales replied that "it was an accident, it was a terrible accident. . . . and in your heart you know that you didn't mean to do it. And God knows that. You couldn't hurt a fly. You know, but this is God's way of telling you that you better change your life. Next time it will be you." Later in the conversation she said: "We already know you're very remorseful. You didn't mean to do it. But it happened. It was just a bad accident. And it was them people's [sic] time. You know, before we're born, God already knows when it's our time and what's going to happen." At the end of the call, Gonzales told appellant: "I love you. And don't worry, mi hijo, it was an accident. God forgives you. You just have to ask him for forgiveness because you didn't mean to do it."

---

[1] The State played the recording of the conversation during the guilt/innocence phase and again at punishment. The conversation is between appellant and a woman. The woman's voice was not identified as appellant's mother's until the punishment phase when she testified.

LAW & ANALYSIS

## A.      Sufficiency of the Evidence

In his second and third issues, appellant challenges the sufficiency of the evidence to support his conviction because the State failed to prove he drove the truck.  We review a challenge to the legal sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Acosta v. State*, 429 S.W.3d 621, 624 (Tex. Crim. App. 2014). We review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011).  The factfinder has a duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (footnotes omitted).  We presume the factfinder resolved conflicting inferences in the State's favor, and we defer to that determination.  *Id*.  A person commits the offense of intoxication manslaughter if he operates a motor vehicle in a public place while intoxicated and, by reason of that intoxication, causes the death of another by accident or mistake.  TEX. PENAL CODE ANN. 49.08(a).

The evidence shows that a truck traveling 95 miles per hour on an interstate highway and swerving from lane-to-lane collided with the Nissan Sentra.  The front end of the truck was damaged and the Nissan was crumpled.  Two people riding in the Nissan died as a result of the collision.

Although appellant challenges the sufficiency of the evidence identifying him as the driver of the truck and argues a second, unidentified person may have been driving, the jury heard ample evidence to establish appellant as the driver.  While talking to his mother, appellant admitted his foot was on the accelerator and he hit the Nissan.  His mother responded that it was

–4–

an accident and she knew appellant was remorseful. She suggested appellant ask God for forgiveness. Appellant never told his mother he was not the driver or not responsible for the collision.

Additionally, Broadnax testified without objection that appellant drove the truck. The report generated from the Airbag Control Module showed no person was in the passenger seat of the truck, and Rodriguez testified she thought the man who was arrested was the driver of the truck and that man looked like appellant. The DNA obtained from the airbag matched appellant's DNA profile. Although appellant told hospital employees that he was rear-ended while driving 55 miles per hour and two witnesses believed there were two men in the truck, the jury could have concluded that appellant was the driver and he was intoxicated because his blood alcohol level was 0.19.

Reviewing the evidence in the light most favorable to the verdict, we conclude a reasonable jury could have found beyond a reasonable doubt that appellant drove the truck while intoxicated and by reason of that intoxication, caused the deaths of Tuong Le and Tri Khuu. *See Adames*, 353 S.W.3d at 860 (sufficiency review); TEX. PENAL CODE ANN. 49.08 (intoxication manslaughter). We overrule appellant's second and third issues.

## B. Confrontation Clause

In his first issue, appellant asserts his constitutional right to confrontation was violated when the trial court admitted State's Exhibit 70, a reenactment of the crash based on information from non-testifying witnesses and created by Detective Ernest Embry of the Dallas County Sheriff's Department. Embry, an accident reconstructionist, went to the wrecking yard where he viewed and photographed the vehicles involved in the collision. Pursuant to a search warrant, he extracted the Airbag Control Module, commonly referred to as a "black box," from the truck. Embry downloaded and analyzed information from the truck's black box.

Embry then created a video crash demonstration, State's Exhibit 70. Although he was not the accident investigator at the scene, he viewed the vehicles at the wrecking yard and compared the wrecked Nissan to pictures showing how the Nissan should have looked. He also reviewed photographs taken at the scene of the accident and admitted into evidence, and reviewed reports from the deputies who worked the accident site and who testified at trial. Embry explained that State's Exhibit 70 depicts what he believed occurred, but the demonstration was not to scale or based on specific measurements. The purpose of the exhibit was to help the jury understand how the accident occurred.

Under the Confrontation Clause of the Sixth Amendment to the United States Constitution, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Supreme Court interpreted this right to mean that "testimonial" evidence is inadmissible at trial unless the witness who made the testimonial statement either takes the stand to be cross-examined or is unavailable and the defendant had a prior opportunity to cross-examine him. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013); *see also Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009).

Error in admitting evidence in violation of a defendant's right to confront the witnesses against him is constitutional error, which requires reversal unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). The question is not whether the verdict was supported by the evidence. *Langham*, 305 S.W.3d at 582 (quoting *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007)). Rather, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's

deliberations in arriving at their decision, that is, whether the error adversely affected the integrity of the process leading to the decision. *Id*.

When determining whether a Confrontation Clause error may be declared harmless beyond a reasonable doubt, we consider: (1) how important the out-of-court statement was to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case. *Id*. We also consider other constitutional harm factors, if relevant, such as the nature of the error, whether or to what extent it was emphasized by the State, probable implications of the error, and the weight a juror would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Id*. (quoting TEX. R. APP. P. 44.2(a)). Ultimately, after considering these various factors, the reviewing court must be able to declare itself satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction before it can affirm. *Langham*, 305 S.W.3d at 582

For purposes of our analysis, we will assume without deciding that State's Exhibit 70 is testimonial. However, we conclude appellant was not harmed by the admission of this evidence.

State's Exhibit 70 is a series of short animations showing how Embry believed the collision occurred. State's Exhibit 70 is cumulative of other evidence in the record, including information from the black box, testimony from Lozano and Rodriguez, photographs of the accident scene and of the vehicles at the wrecking yard, and testimony from the officers who arrived at the scene, and was not significant to the State's case. The fact that the truck hit the

Nissan, as shown in Exhibit 70, was corroborated by two eye-witnesses, Lozano and Rodriguez, and by damage to the vehicles. The only contradictory evidence in the record is appellant's assertion to medical personnel that his truck was hit from behind. The State did not devote substantial time to the exhibit and did not discuss the exhibit or Embry's testimony during its closing argument. Based on our review of the record, we do not believe a jury would have given much weight to State's Exhibit 70 in light of the other evidence in the record, including appellant's statement to his mother that his foot was on the accelerator and he caused the crash and her response that it was an accident.

After reviewing the entire record, we conclude beyond a reasonable doubt that the introduction of State's Exhibit 70 did not materially affect the jury's deliberations. Accordingly, any error by the trial court in admitting this evidence was harmless. We overrule appellant's first issue.

## C.    Comment on the Evidence

In his fourth issue, appellant argues the trial court improperly commented on the weight of the evidence by accusing a witnesses of lying. Yolunda Gonzales, appellant's mother, testified during the punishment phase of the trial that she spoke to appellant on the phone while he was incarcerated. The State played the phone call discussed above and Gonzales confirmed the voices are hers and appellant's. During the call, Gonzales said: "We are going to get you that really good lawyer. . . . and it will work out. . . it's not going to be the full twenty or whatever that lawyer told you. You know, getting a good lawyer, it helps, and this guy said that he knows the judge, that they play golf together. You know in the United States you buy justice."

The judge asked the State to stop the recording and the following exchange occurred:

THE COURT:   That is not accurate. Okay. Just so we're all clear about that. Okay. That is simply a lie.
MR. JACKSON:      What is a lie, Your Honor?

–8–

THE COURT: I don't play golf with you. That's all I'm going to say, and you don't need to say anything else.

MR. JACKSON: Your Honor, I didn't assume representation until 10/4. This whole conversation was 9/22.

THE COURT: That's fine.

MR. JACKSON: I never said anything about playing golf with you.

THE COURT: You don't need to say a word. You guys don't need to say a word.

Just continue playing the tape.

MR. JACKSON: Well, what I'm saying is that she's not lying, Your Honor, and I object to the Court's representation that she is.

MR. ROBINIUS:[2] Judge, they are talking about another lawyer that was appointed before we were involved, that's what I wanted to say.

THE COURT: Okay. That's fine. Go ahead. I don't play golf, by the way.

Gonzales confirmed that Jackson did not represent appellant when the phone call was recorded.

On appeal, appellant asserts the trial court improperly commented on the weight of the evidence by accusing Gonzales of lying. The State responds that the judge corrected a false impression of judicial impropriety created by Gonzales's comments.

After reviewing the recorded phone call in conjunction with the judge's comments and conversation with the attorneys, it is clear that the judge did not accuse Gonzales of lying but corrected the misimpression that he plays golf with appellant's counsel and, therefore, appellant could receive preferential treatment in court. Gonzales stated in the telephone call that she was going to hire a lawyer who plays golf with the judge because "it helps" and "in the United States you buy justice." These statements could have created the appearance of impropriety, which the trial judge sought to avoid by making the record clear that he does not play golf. Appellant's trial counsel even asked the court for clarification after the judge said "[t]hat is simply a lie," and the judge replied: "I don't play golf with you. That's all I'm going to say, and you don't need to say anything else."

---

[2] Both Jackson and Robinius represented appellant at trial.

Even if the trial court's comments were improper, we conclude appellant has not shown he was harmed by any error. *See* TEX. R. APP. P. 44.2. In the jury's presence, appellant's lawyers stated they became his counsel after the phone conversation. Gonzales confirmed Jackson did not represent appellant when the phone call was recorded. Counsel's and Gonzales's statements support the trial court's effort to clarify the record about his relationship with appellant's counsel and show he was not calling Gonzales a liar.

We overrule appellant's fourth issue.

**D.      Admission of Autopsy Photographs**

In his fifth issue, appellant argues the trial court abused its discretion by admitting autopsy photographs over his objection because they were more prejudicial than probative in violation of Texas Rule of Evidence 403. Specifically, he complains about the admission of three autopsy photos of Tuong Le, State's Exhibits 4, 61 and 62, and three autopsy photos of Tri Khuu, State's Exhibits 5, 64, and 65.

Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). A court may consider several factors when determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice, including but not limited to, the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in black and white or color, whether they are close-up, and whether the body is depicted naked or clothed. *See id.* The admissibility of a photograph is within the sound discretion of the trial judge. *See id.*

The autopsy photographs were admitted during the testimony of Janis Townsend-Parchman, a Dallas County Medical Examiner who performed the autopsies on Tuong and Tri. State's Exhibit 4 shows Tuong's face with a two-inch laceration above her left eyebrow and the autopsy case number assigned to her. State's Exhibits 61 and 62 are "overall photographs" showing large portions of the front of Tuong's body. The photos show some abrasions and contusions to her body. State's Exhibit 5 also is an autopsy identification photograph showing Tri's face and autopsy case number. State's Exhibits 64 and 65 are full body photographs of the front and back of Tri's body after he died. The photos show some medical equipment that was used to treat Tri before he died.

Townsend-Parchman used the autopsy photographs to describe the decedents' injuries to the jury. In her experience, people without extensive backgrounds in viewing pictures of injuries struggle to envision them and they need to see photographs. The images also establish the decedents' identities and the case numbers assigned to them. Although the decedents' bodies are not clothed in the pictures, their genitals are fully covered, the bodies are clean, the external injuries are not substantial, and there are no autopsy incisions to the bodies. The photographs are relevant, took little time to develop during Townsend-Parchman's testimony, and are not gruesome. Under these circumstances, we conclude the probative value of the photographs is not substantially outweighed by the danger of unfair prejudice. We conclude the trial court's decision to admit the photographs was within the zone of reasonable disagreement and was not an abuse of discretion. We overrule appellant's fifth issue.

E.      **Ineffective Assistance**

In his sixth issue, appellant asserts his trial counsel provided ineffective assistance. To successfully assert an ineffective assistance of counsel challenge on direct appeal, an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness

–11–

and (2) the deficient performance prejudiced him; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). An ineffective assistance of counsel claim must be "firmly founded in the record," and the record must "affirmatively demonstrate" the claim has merit. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). We commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

The court of criminal appeals has made clear that, in most cases, a silent record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Rylander*, 101 S.W.3d at 110. Further, counsel should ordinarily be accorded the opportunity to explain his actions before being denounced as ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Because the reasonableness of trial counsel's choices often involve facts that do not appear in the appellate record, an application for writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Appellant argues his counsel was ineffective because he did not file a motion to suppress or object to the admission of the blood-alcohol test results obtained as a result of a warrantless blood draw and did not object to the admission of DNA evidence because there is no evidence he consented to submitting to a blood sample for DNA analysis. As an initial matter, although appellant filed a motion for new trial, he did not raise the issue of ineffective assistance of counsel, and no evidentiary hearing was conducted on the issue. Thus, the record is silent about counsel's reasons for his actions so we do not know why appellant's counsel did not file a

–12–

motion to suppress or object to the admission of the DNA evidence about which appellant now complains.

Further, in 2010 when the collision occurred and in 2011 when appellant's case was tried, the Texas Transportation Code required a peace officer to take a specimen of a person's breath or blood if the officer arrested a person for intoxicated manslaughter and the officer reasonably believed the accident occurred as a result of the offense and an individual died or would die as a direct result of the accident. *See* TEX. TRANSP. CODE ANN. §724.012(b) (West Supp. 2011). The statute also stated the arrested person "is deemed to have consented" to the taking of the person's breath or blood to determine the alcohol concentration. *See id.* §724.011. The implied consent law "expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant." *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002).

Broadnax testified that, based on appellant's demeanor and because he smelled of alcoholic beverages, Broadnax believed appellant was intoxicated. He also believed appellant's intoxicated state caused the collision that killed two people. Broadnax requested appellant's blood be drawn even though appellant did not consent. Based on this testimony and the statute in effect at the time, appellant's counsel could have concluded that filing a motion to suppress evidence collected in accordance with the statute was without legal basis. *See Jagaroo v. State*, 180 S.W.3d 793, 800 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("It is not ineffective assistance for counsel to forego making frivolous arguments and objections.").

Although the court of criminal appeals subsequently issued an opinion addressing warrantless blood draws and rejecting the argument that the mandatory blood draw and implied consent provisions of the transportation code "form a valid alternative to the Fourth Amendment warrant requirement," *see State v. Villarreal*, 475 S.W.3d 784,793 (Tex. Crim. App. 2014), that

–13–

decision was issued years after this case proceeded to trial.  We cannot say that appellant's counsel was ineffective for failing to file a motion to suppress or object to the admission of his blood alcohol content or DNA evidence based on the law at the time of trial.  We overrule appellant's sixth issue.

CONCLUSION

We affirm the trial court's judgments.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
111061F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ARMANDO FERMIN SOTO, Appellant

No. 05-11-01061-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F10-19502-H.
Opinion delivered by Justice Stoddart.
Justices Francis and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 15th day of December, 2016.



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

ARMANDO FERMIN SOTO, Appellant

No. 05-11-01062-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F10-19503-H.
Opinion delivered by Justice Stoddart.
Justices Francis and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 15th day of December, 2016.