**AFFIRMED as MODIFIED and Opinion Filed March 23, 2023**



In the
# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-20-00154-CR
No. 05-20-00155-CR

**CHARLES TURNER GLOVER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause Nos. F18-55030-H & F18-55032-H**

## MEMORANDUM OPINION
Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Carlyle

A jury convicted Charles Turner Glover of aggravated assault and unlawful possession of a firearm, enhanced by prior felony convictions. The jury assessed punishment at thirty years' imprisonment in the aggravated assault case and twenty-five years' imprisonment in the unlawful possession of a firearm case.

Mr. Glover contends (1) the trial court erroneously denied his pretrial motion to suppress the fruits of a warrantless search of his car and (2) the judgments in each case should be modified to reflect the correct deadly weapon statute. We affirm the

trial court's judgments as modified in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

The trial court held a pretrial hearing outside the jury's presence on Mr. Glover's motion to suppress. Charles Schultz testified that at about 4 p.m. on June 15, 2018, he was on duty as a Dallas police officer. He and his partner, Officer Stewart, responded to a dispatch about a shooting and a suspect fleeing the scene in a brown Chrysler 300. The dispatcher provided a partial license plate number.

As the two officers headed to the scene in a marked police car, they saw the Chrysler heading in the opposite direction. There was one occupant, a male driver. The officers followed the car but did not initiate a traffic stop. As the officers rounded a corner onto a side street, they saw the Chrysler parked in the street illegally with the driver's-side door open. The driver, later identified as Mr. Glover, was running away from the car. Officer Stewart pursued him into the alley and Officer Schultz ran down the street looking to obstruct paths from the alley.

After Officer Schultz lost sight of his partner and Mr. Glover, he "retreated back to the vehicle to secure it" because "we believed it to be the suspect vehicle involved in this shooting." Officer Schultz started "looking in the vehicle" because "[i]n order for us to tow a vehicle per [Dallas Police Department] policy, we need to do an inventory search that authorizes us to go through the main compartment, any kind of trunk space, just so that we can inventory everything that was in it prior to

moving it." He also stated "[w]e had an unknown variable of if he was going to circle around." Officer Schultz testified he found a gun in the car's trunk.

The trial court denied Mr. Glover's motion to suppress and stated it found the car "was abandoned at the time" and Mr. Glover lacked standing to challenge the search.

During trial before the jury, Officer Schultz testified regarding the above-described search. The gun he found was admitted into evidence and the State presented testimony tying it to other evidence recovered.

Broderick Mosley testified that at the time of the shooting, he was at a tire shop next to the convenience store where the shooting took place. He testified he heard Mr. Glover say "I'll kill you," then heard "a pop." Mr. Glover got into a car and drove off. Mr. Mosley approached the convenience store and saw "a guy laying on the floor bleeding." He called 911 and reported the car's license plate number. Video footage from the convenience store's surveillance cameras was admitted into evidence without objection and published to the jury.

Mr. Glover testified he was a convicted felon at the time of the shooting and had been released from parole or confinement for a felony within the previous five years. On that morning, he drove his Chrysler 300 to the convenience store to use the ATM. The complainant, an acquaintance, asked him for a ride to pick up some belongings and got into his car. They made several stops, including picking up a bag of the complainant's belongings, which Mr. Glover let him put in the trunk. When

they stopped at a service station, the complainant retrieved his bag from the trunk, returned to the car, and took out a gun. Mr. Glover told him to put the gun back in the bag and he did so. At some point, the gun was returned to the trunk. Then the complainant and Mr. Glover "just went riding." Mr. Glover stated the complainant became upset with him when he remarked on the complainant's personal relationships and "[t]hat's when we got into the altercation."

Mr. Glover testified that as they approached the convenience store to pick up another acquaintance, the complainant "just hit me upside the head." Mr. Glover "tried to hit him" but had his seat belt on. The complainant jumped out of the car and "ran around by the trunk." Mr. Glover "was in fear he was gone try to get the gun out" and "didn't want him to get it before I did." Mr. Glover pulled a knife from his pocket and told the complainant "don't make me kill you." The complainant "got away from the back of the car," then went inside the store for several minutes. At that point, Mr. Glover took the gun from the trunk and ran to the door of the store. Through a crack in the door, he told the complainant to pay back the money the complainant owed him and he would give back the complainant's gun and other belongings. The complainant pushed the door open, knocking out several of Mr. Glover's teeth. Mr. Glover backed up and the complainant "bum-rushed" him and tried to tackle him. The complainant "kept hitting at the gun," then "grabbed the top barrel of the gun." Mr. Glover testified "that's when I pulled back like this here, and that's when it went off." The complainant fell to the sidewalk and Mr. Glover

"panicked and left." He testified that though he does not deny he shot the complainant, he did so in self-defense.

On cross-examination, Mr. Glover stated he knew there was a gun in his car and he "actually put [his] own hands on that firearm." He testified that after the gun discharged, he "[t]hrowed it in the trunk." Additionally, the State asked, "There was no gun involved until you walked towards the victim with the firearm. Is that correct?" Mr. Glover responded, "Yes."

**Analysis**

A person commits aggravated assault if he uses or exhibits a deadly weapon during the commission of an assault. TEX. PENAL CODE § 22.02(a)(2); *see also id*. § 22.01(a) (defining assault as intentionally, knowingly or recklessly causing bodily injury to another). A person who has been convicted of a felony commits an offense if he possesses a firearm before the fifth anniversary of his release from confinement or parole for the felony conviction or, after that period, at any location other than the premises at which he lives. *Id*. § 46.04; *see also id*. § 1.07(a)(39) (defining "possession" as "actual care, custody, control, or management").

Texas Rule of Appellate Procedure 44.2(a) states,

If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

–5–

TEX. R. APP. P. 44.2(a). Thus, our inquiry regarding uncured constitutional error is whether "there was a reasonable possibility that the error . . . moved the jury from a state of non-persuasion to one of persuasion" on the relevant issue. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). We consider several non-exclusive factors, including the error's nature, whether the State emphasized the error, the error's probable implications, the weight the jury would likely give the error in its deliberations, and the presence of "overwhelming evidence." *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). "The State has the burden, as beneficiary of the error, to prove that the error is harmless beyond a reasonable doubt." *Haggard v. State*, 612 S.W.3d 318, 328 (Tex. Crim. App. 2020).

In his first and second issues, Mr. Glover contends the trial court (1) "erroneously denied Glover's motion to suppress because the State failed to meet its burden to show a lawful inventory [search] and because the search was not a valid search incident to arrest" and (2) abused its discretion by "finding that Glover's vehicle was abandoned property." He asserts violation of his rights under the Fourth Amendment to the U.S. Constitution and article I, section 9, of the Texas Constitution.

The State argues, among other things, that the gun and the evidence derived from it did not contribute to Mr. Glover's convictions because (1) "[t]he aggravated-assault case was not about linking Appellant to the crime with the firearm found in the Chrysler, it was about self-defense, a justification of admitted conduct," and

–6–

(2) "the unlawful-possession-of-a-firearm case did not hinge on the firearm seized from the Chrysler," as Mr. Glover testified he "possessed a gun" at the convenience store.

Because we agree with the State that any erroneous admission of evidence pertaining to the search in question does not warrant reversal, we need not address the search's propriety. *See* TEX. R. APP. P. 47.1. The record shows the nature of the alleged error was the admission of the gun's location when found and evidence showing Mr. Glover had possessed and fired it. After the State addressed those facts in its case-in-chief, Mr. Glover testified that while in an altercation with the complainant at the convenience store, he took the complainant's gun out of the Chrysler 300's trunk, approached the complainant with the gun, shot him during a struggle, then threw the gun back in the trunk and fled. In light of that unchallenged evidence and Mr. Glover's self-defense focus, the complained-of evidence was of minimal consequence. *See Snowden*, 353 S.W.3d at 825; *Wesbrook*, 29 S.W.3d at 120. "In short, the precise error in this case, in our view, did not move the jury from a state of non-persuasion to a state of persuasion on any material issue in the case; nor is it reasonably likely to have caused such prejudice as to distract the jury or divert it from its proper fact-finding role." *Snowden*, 353 S.W.3d at 825. On this record, we conclude beyond a reasonable doubt that the alleged error did not contribute to Mr. Glover's above-described convictions or punishment. *See* TEX. R. APP. P. 44.2(a).

In his third issue, Mr. Glover contends that though the trial court's judgments in both cases "correctly reflect the court's finding that he 'used or exhibited a deadly weapon . . . during the commission of the felony offense,'" the judgments improperly "identif[y] the attendant statutory provision as "TEX. CODE CRIM. PROC. art. 42.12, § 3g." He asserts that because "[t]he statutory provision related to the court's entry of an affirmative deadly weapon finding is now codified in article 42A.054(c)," the judgments should be modified to reflect the correct provision. The State agrees.

This Court has the power to modify judgments to make the record speak the truth when it has the necessary data and information to do so. *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd); TEX. R. APP. P. 43.2(b). The trial court's deadly weapon finding refers to a repealed section of the code of criminal procedure. *See Jessie v. State*, No. 05-20-00995-CR, 2022 WL 1164657, at *2 (Tex. App.—Dallas Apr. 20, 2022, no pet.) (mem. op., not designated for publication). Thus, we modify the trial court's judgments to contain a statutory citation to "Tex. Code Crim. Pro. art. 42A.054(c)" instead of article 42.12, § 3g.

We affirm the trial court's judgments as modified.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
200154F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHARLES TURNER GLOVER,
Appellant

No. 05-20-00154-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 1, Dallas County, Texas
Trial Court Cause No. F18-55030-H.
Opinion delivered by Justice Carlyle.
Justices Goldstein and Kennedy
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** to contain a statutory citation to "Tex. Code Crim. Pro. art.
42A.054(c)" regarding the deadly weapon finding, instead of code of criminal
procedure article 42.12, § 3g.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered March 23, 2023



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

CHARLES TURNER GLOVER, Appellant

No. 05-20-00155-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas Trial Court Cause No. F18-55032-H. Opinion delivered by Justice Carlyle. Justices Goldstein and Kennedy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to contain a statutory citation to "Tex. Code Crim. Pro. art. 42A.054(c)" regarding the deadly weapon finding, instead of code of criminal procedure article 42.12, § 3g.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered March 23, 2023